### FRANKLIN et al. v. HOADLEY et al.

(Supreme Court, Appellate Division, First Department.   June 9, 1911.)

1. PARTNERSHIP (§ 49*)—EXISTENCE OF RELATION—EVIDENCE—ADMISSIBILITY.
   Where in a suit the sole issue was the existence of a partnership between defendants, the declaration of one of the alleged partners made to a third person that the partnership was formed by the alleged partners, and that in the transaction with the third person he represented the partnership, was inadmissible to prove a partnership, and that declarant represented it in the transaction.
   [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 67–73; Dec. Dig. § 49.*]

2. TRIAL (§ 250*)—INSTRUCTIONS—SUBMISSION OF ISSUES.
   A defendant is entitled to have a case submitted to a jury in accordance with the theory of the complaint, and it is error to submit another theory, especially when not justified by the evidence.
   [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 584–586; Dec. Dig. § 250.*]

   Miller and Scott, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by William B. Franklin and another against Joseph H. Hoadley and others. From a judgment for plaintiffs, and from an order denying a new trial, certain of the defendants appeal. Reversed, and new trial ordered.

See, also, 117 App. Div. 909, 102 N. Y. Supp. 1137; 130 App. Div. 899, 115 N. Y. Supp. 1121.

Argued before INGRAHAM, P. J., and McLAUGHLIN. SCOTT, MILLER, and DOWLING, JJ.

George S. Graham, for appellant Hoadley.
Alton B. Parker, for appellant Leiter.
Edmund L. Mooney, for respondents.

McLAUGHLIN, J.   The plaintiffs are stockbrokers, and the action is brought to recover damages sustained by them in a stock transaction. The complaint alleges that prior to March, 1902, the defendants entered into an agreement with each other, whereby they formed a combination known as a pool, for the purpose of controlling the market price of the stock of the International Power Company, by means of purchases and sales, and "whereby it was further agreed that the whole or greater part" of such purchases and sales "should be conducted in the name of the defendant Judson individually and that he should employ all brokers in his own name, but for the benefit

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of all the defendants jointly"; that "on April 20, 1902, the defendants, acting through the defendant Judson as aforesaid, duly employed the plaintiff to make various purchases and sales of the said stock and opened an account with them designated 'Cyrus Field Judson, Special'"; and that "on April 29, 1902, at the request of said Judson, acting as aforesaid, the plaintiffs purchased" certain shares of stock which Judson failed to take up and pay for, and which they sold, sustaining the loss complained of, for which a recovery is asked. The defendant Judson appeared in the action, but did not answer. The appellants answered separately and put in issue the allegation of the complaint as to the existence of the pool or partnership and the authority of Judson to represent them in the purchase of the stock. The action has been tried three times. On the first trial judgment was entered in favor of the plaintiffs against the three defendants on Judson's default and on a verdict against Hoadley and Leiter. On appeal the judgment was reversed as against Hoadley and Leiter, and a new trial granted, on the ground that the court erred in admitting certain evidence. Franklin v. Hoadley, 115 App. Div. 538, 101 N. Y. Supp. 374. On the second trial, the plaintiffs again had a verdict against Hoadley and Leiter, upon which judgment was entered, which, on appeal, was reversed on the ground that the court erred in refusing to instruct the jury that the declarations of Judson that Hoadley and Leiter were his partners and interested in the pool, were not competent to establish the partnership. Franklin v. Hoadley, 126 App. Div. 687, 111 N. Y. Supp. 300. On the third trial the plaintiffs had another verdict against Hoadley and Leiter upon which judgment was entered, from which they separately appeal.

[1] This judgment must also be reversed because the trial court did not follow the rule laid down on the former appeal. On the last trial there was but a single issue to be tried, viz., the existence of the partnership or Judson's authority to represent Hoadley and Leiter in the purchase of the stock in question. At the beginning of the trial counsel for both Hoadley and Leiter stipulated that the plaintiffs purchased, upon the order of Judson, the stock alleged in the complaint at the time and price named, and by reason thereof they sustained the loss for which a recovery is asked. Having made this stipulation, the only possible issue left to be tried was whether or not Judson had authority to represent Hoadley and Leiter in giving to the plaintiffs the orders to purchase. That this was the only issue was further emphasized when the plaintiffs sought to prove Judson's declarations to the effect that a pool or partnership had been formed by Hoadley, Leiter, and himself, and in purchasing the stock in question he represented the pool. Counsel for Hoadley and Leiter in stating their objections to the admission in evidence of such declarations said:

"If Cyrus Field Judson, as a matter of fact, was acting for these two defendants when he gave that order, we must respond."

The "only issue in the case" was whether the purchase by Judson "was a transaction done for Leiter and Hoadley within the terms of his authority," and there was "no controversy with the plaintiffs as to the fact that on the day in question they received from Cyrus Field

Judson" the orders to purchase. These declarations were clearly inadmissible, and should have been excluded under the rule laid down by a majority of this court on the second appeal. 126 App. Div. 687, 111 N. Y. Supp. 300. It was there said:

"Where the existence of a partnership is in issue, the declaration of one party that another is his partner is not competent to establish the partnership, nor do such declarations for that purpose become admissible after prima facie evidence of the existence of the partnership has been given. The existence of the partnership cannot be strengthened, fortified, or bolstered up in this way. All that is meant by the authorities and text-books in saying that such declarations become admissible when prima facie evidence has been given of the partnership is that they may be received for the purpose of binding the partnership, assuming, of course, its existence can be found solely from the other evidence, and, whenever such issue is presented at a trial before a jury, then specific instructions should be given to this effect."

We again state Judson's declarations to the plaintiffs cannot be received for the purpose of establishing the partnership, and that he represented Hoadley and Leiter in giving the orders to purchase the stock in question; that, if such declarations are received to establish either directly or indirectly such fact, then a judgment for plaintiffs against Hoadley and Leiter, so far as this court is concerned, will not be permitted to stand.

[2] I am also of the opinion that the trial court erred in submitting the case to the jury on the theory that they might find for the plaintiffs if Judson were the agent of Hoadley and Leiter, even though no partnership existed. No such theory was suggested in the complaint, nor did any of the trials proceed upon such theory. Plaintiffs' counsel in opening to the jury stated that the action was brought against the defendants "as composing a pool, partnership or joint account and we expect to prove to your satisfaction that a pool, partnership or joint account is one and the same thing." The complaint was not amended, and Hoadley and Leiter were entitled to have the case submitted to the jury upon the theory upon which the action had been brought and tried. Besides, the evidence did not justify a finding that Judson acted in the transaction simply as the agent of Hoadley and Leiter, and a finding that he did is contrary to evidence.

Other errors are alleged, but the conclusion reached renders it unnecessary to consider them.

The judgment and order appealed from are therefore reversed and a new trial ordered, with costs to appellants to abide the event.

INGRAHAM, P. J., and DOWLING, J., concur.

MILLER, J. (dissenting). There is not now, and has not been on any of the appeals in this case, any difference of view among the members of this court upon the proposition that the declarations of a partner or agent are not admissible to prove the partnership or agency, and that such declarations can only be received to bind the partnership or principal after prima facie evidence of authority has been given. It is assumed in the prevailing opinion that the only issue in the case was "the existence of the partnership or Judson's authority to represent Hoadley and Leiter," and that evidence of Jud-

son's declarations was received to establish the partnership. We differ only as to the correctness of that premise. Of course, no one disputes that, if correct, it requires the conclusion that the judgment should be reversed. It is necessary, therefore, to understand precisely what issues were involved, what the evidence in question was, and for what purpose it was received.

It was conceded that on April 29, 1902, the plaintiffs, brokers, executed two orders given them by Judson, each for the purchase of 500 shares of International Power Company stock at 198, that Judson failed to accept and pay for the stock, and that the plaintiffs thereby sustained a loss of $65,681.50. That left to be tried the issue "whether the purchase by Judson was a transaction done' for Leiter and Hoadley within the terms of his authority," as stated by my Brother McLAUGHLIN, in quoting the statements of the appellants' position made by their counsel on the trial. But that issue involved two elements, viz.: (a) Whether Judson had authority to bind Hoadley and Leiter; (b) whether he gave the order to purchase on their behalf or on his own account. Proof of "a" would not establish "b." Evidence of what Judson said to the plaintiffs when he opened the special account and gave the orders in question was not competent to establish his authority, but it constituted the only proof available outside of Judson's testimony to show for whom the orders were given. The evidence, said to have been erroneously admitted, was the testimony of the plaintiffs to the effect that, when he opened the account, he stated that it was for a pool consisting of himself, Hoadley, and Leiter. That evidence was admissible, not to prove his authority, but, there being prima facie evidence of that, to bind his principals by showing that the orders were given for their account. Mullen v. Quinlan Co., .195 N. Y. 109, 87 N. E. 1078, 24 L. R. A. (N. S.) 511. His statement was not evidence of its truth. It was provable, not as a declaration, but as a fact characterizing the transaction of which it was a part. In a nutshell, the case is this: A., who is dealing in stocks on his individual account, also has authority to deal for the account of B. and C. He places an order with brokers, telling them that it is for B. and C. The brokers bring suit on the transaction against B. and C., and prove A.'s authority; but, if the decision about to be made is correct, they must be nonsuited because they cannot give evidence of A.'s statement to them for the purpose of proving that the particular transaction was for the account of B. and C.

When the said evidence was admitted, and again in the charge, the court plainly instructed the jury that it could not be considered on the question of Judson's authority to bind the defendants, that it could only be considered in case the jury found from other evidence that he had such authority, and then only on the question whether the orders were given for himself individually or on behalf of the other defendants. As I view it, that ruling and instruction strictly complied with the rule twice laid down by this court in this case. On the first appeal (115 App. Div. 538, 101 N. Y. Supp. 374), Mr. Justice Houghton, writing for the majority of the court, undertook to clear up the point for the guidance of the court on a retrial, and distinctly stated the rule to be that, while evidence of Judson's state-

ment was not competent to prove his authority, it was admissible after prima facie evidence of such authority had been received upon the question whether he gave the orders on his own account or for the other defendants. On the second trial the court failed to follow that rule, and refused a request to charge:

"That the jury cannot consider the declarations of Judson to plaintiffs or either of them, as binding upon the defendant Leiter, until the jury finds from other evidence than those declarations that a partnership existed between the three defendants on the 29th of April, 1900."

For that error alone the judgment was reversed on the second appeal (126 App. Div. 687, 111 N. Y. Supp. 300).

The other point upon which the judgment is about to be reversed may appear at first blush to be well taken. The plaintiffs brought suit, as they were certainly justified in doing, on the theory that the orders were given for the "pool," or joint, account of Judson, Hoadley, and Leiter. The testimony of Judson, if accepted, established his authority to purchase and sell stock for the joint account of the three. On the first and second trials the case was tried and submitted to the jury solely on that theory. But the liability of the appellants to the plaintiffs depended on Judson's authority to represent them, not on whether he was also a principal. The question was one of agency in either case, and by joining too many as defendants the plaintiffs were not precluded from recovering against those who were proven to be principals. The real issue was whether Judson had authority to give the orders on behalf of Hoadley and Leiter, irrespective of whether he was also in fact a principal. For the first time in the history of this litigation, that issue was perceived by the court on the trial now being reviewed, and was defined to the jury in terms which they could easily understand.

I shall not undertake in a dissenting opinion to analyze the evidence contained in a record of nearly 4,000 folios, but a brief summary of the appellants' claims and of some of the conceded facts may serve to clear up the point under discussion. They admitted that some time in 1900 1,200 shares of the International Power Company stock was acquired and held by Judson for the joint or pool account of himself and them, that later he was authorized by them to deal in the stock of said company for their account but in his own name and solely as agent, and that during 1901 he purchased and sold upwards of 170,-000 shares for their account, but they asserted that his agency was terminated on December 11, 1901. That assertion was based on the fact that some time in the early part of 1902 his accounts were balanced as of December 11, 1901, and he gave Hoadley a certificate, dated February 18, 1902, to the effect that he then held in trust for Hoadley 6,900 shares of the common stock of the International Power Company. It is conceded that Leiter was jointly interested with Hoadley in that stock. Judson continued to deal as he had done theretofore, and Hoadley continued as theretofore to furnish him stock to use as margins or with which to make deliveries. Hoadley claimed, however, that, after the alleged settlement, he merely loaned stock to Judson, and that he and Leiter agreed to keep out of the market

and allow Judson to carry on a campaign of market manipulation on his own account, but from which they expected to profit. The latter's dealings during March and April, 1902, amounted to upwards of $20,000,000. His transactions were reported daily to Hoadley with the purchase and sales slips, and were entered in books kept at the office of Hoadley, Leiter, and the International Power Company; and during the month of April he turned over to Hoadley nearly $1,000,000 which the latter said was for stock loaned. The plaintiffs said that Judson's dealings were for the joint account of himself, Hoadley, and Leiter. The appellants said that up to December, 1901, he had dealt solely as agent for their joint account, but that thereafter his dealings were for his individual account. As the learned trial judge plainly perceived, it was of no consequence whether Judson was a member of the partnership or "pool," and the real question was whether his authority to represent the appellants continued up to the time of the transaction in suit. That issue was made plain to the jury, who decided upon sufficient evidence that the agency continued up to the crash on April 30, 1902.

It was urged that the plaintiffs could not have a judgment against both the agent and his principal; but this is not the case of an agent dealing for undisclosed principals, which requires a plaintiff to elect against whom to proceed. The appellants were disclosed principals. The plaintiffs were justified in any view of the case in suing all three as principals; and, if, as claimed by the appellants, Judson was only an agent, the plaintiffs were still entitled to a judgment against him, because he was estopped, by his representation to them, to deny that he was also a principal.

Another point earnestly urged by the learned counsel for the appellant Leiter deserves consideration. Judson testified that he only had authority to purchase on specific instructions from Hoadley, and that the latter instructed him before the opening of the market on April 29th to purchase 500 shares on every two points down from the opening and to sell 500 shares on every two points up. The market opened at 198, the price at which both orders in question were given. Judson's testimony, however, with the other evidence in the case, justified a finding that the first order to purchase 500 shares at 198 was reported to, and approved by, Hoadley, and that the latter then and at subsequent times during the day gave Judson practically unlimited authority to purchase at the market by telling him at each conversation over the telephone "to continue buying and selling." While the exact quantities and prices for which orders were given do not appear to have been definitely stated by Judson to Hoadley, the latter was told the price at the opening, and the jury probably concluded that, in view of the volume of the transactions reported to him and of his interest in them, he occasionally glanced at the tape, which was at hand, and fully understood at what price the orders were being executed. It was plainly a question for the jury whether his direction "to continue buying and selling" was intended as a general authorization or one to be limited by his instructions before the opening. The court carefully instructed the jury on that point.

Many other exceptions are referred to on the briefs. The rec-

ord is replete with discussions and with testimony in regard to the so-called "pools," which might well have been eliminated in view of the narrow issue, which was finally presented. But that issue was only developed as the case progressed and after the appellants had stated their view of the transactions. It would be very strange if some erroneous rulings could not be found in a record of the size presented on this appeal. In my view of the case, the appellants have failed to establish that prejudicial error was committed, and the usual burden sustained by an appellant under the rule now applied by appellate courts in this state is certainly not lessened in this case by the fact that the respondents have recovered three verdicts.

For the foregoing reasons, I vote to affirm the judgment.

SCOTT, J., concurs.