JOHN T. SMITH et al., Appellants, *v.* JOHN C. LEGG, JR., et al., Respondents.

Fourth Department, November 30, 1961.

*Smith & Sovik*, attorneys (*Laurence Sovik* of counsel), for appellants.

*Hiscock, Cowie, Bruce, Lee & Mawhinney*, attorneys (*Phillip T. Young* of counsel), for respondents.

*Per Curiam.* Plaintiffs appeal from a judgment for the defendants in a suit involving two causes of action relating to legal services claimed to have been performed by plaintiffs for the defendants. Errors in the exclusion of certain testimony and in the charge of the Trial Justice require reversal and a new trial.

It is undisputed that none of the defendants actually asked the plaintiffs to perform the services in question or specifically agreed to pay for them. It is plaintiffs' theory, however, that they were requested by one Hugh Dickson on behalf of himself and the named defendants to render such services. Dickson is now deceased and his estate is not a party.

Dickson and two partnerships named, respectively, Legg & Co. (hereinafter called Legg) and Brown & Sons (hereinafter called Brown) were joint venturers in a plan to acquire control of a Syracuse, New York, insurance company. All of the defendants are partners in either Legg or Brown. Under an agreement between Dickson, Legg and Brown, Dickson was to assume all solicitation and legal expense connected with the venture. This agreement was signed August 6, 1953.

Plaintiffs' first cause of action alleges that in May of 1953 they were engaged by the defendants. through Dickson, to obtain a list of stockholders for the purpose of presenting an offer to purchase stock from the stockholders of the insurance

company. For their second cause of action, they claim that on or about September 5, 1953, they were engaged by defendants, again through Dickson, to commence proceedings to set aside a voting trust agreement promoted by the management of the insurance company, to enjoin or set aside a plan of mutualization contemplated by management, and to examine the books and records of the company. While a good deal of time obviously was spent on these endeavors, plaintiffs were successful only in obtaining the list of stockholders.

Defendants claim that Dickson had no authority to retain plaintiffs on their behalf and, further, that at the time of the agreement of August 6, 1953, the list of stockholders had already been obtained.

To maintain their cause of action, plaintiffs had to prove that Dickson and the named defendants were joint venturers and that Dickson had apparent authority to engage the plaintiffs on behalf of himself and the defendants. To establish the joint venture, plaintiffs introduced documentary proofs, signed by Dickson, Legg and Brown. These were a depository agreement with a Syracuse bank providing for an escrow of $100,000 to show their good faith in making the offer to purchase stock, dated August 9, 1953, as well as the purchase offer itself. These documents presented, at least, some evidence that there was a partnership or joint venture, and if so Dickson would ordinarily be a general agent of the group for the purposes of the venture (Partnership Law, § 20, subd. 1; see, also, 2 N. Y. Jur., Agency, §§ 76, 80). If the proof established a joint venture, then it would be incumbent upon the defendants to come forward with proof that plaintiffs had knowledge of Dickson's lack of actual authority. (See *Ruggles* v. *American Cent. Ins. Co.,* 114 N. Y. 415; *Walsh* v. *Hartford Fire Ins. Co.,* 73 N. Y. 5; *Laing* v. *Butler,* 37 Hun 144, 147, affd. 108 N. Y. 637.)

With this posture of the case in mind, we come to questions involving the exclusion of certain letters from Dickson to plaintiff Sovik and also the exclusion of conversations between Dickson and Sovik. Defendants' position is that these admissions are not binding upon them and that they were properly excluded. It is undeniably a general rule that where the existence of a partnership is at issue, extrajudicial statements of a person admitting himself to be a partner and asserting that another is his partner are not admissible unless the partnership is first "evidenced" (4 Wigmore, Evidence [3d ed.], § 1078, n. 10). In other words, although such statements are never admissible to prove the partnership itself, once a prima facie case of agency is made out, the admissions may be admissi-

able if otherwise relevant and proper; in this case, for example, there must have been proof of what Dickson directed plaintiffs to do. Both sides argue the legal effect of *Franklin* v. *Hoadley* (115 App. Div. 538, 126 App. Div. 687, 145 App. Div. 228 [1st Dept.]). The problem there however was whether, after one partner testified as to the existence of the partnership between him and the defendants, it was competent to then prove by him, that he acted for the other partners who were defendants, in the transaction in question. The proof could have been received for no other reason.

As we have stated, in the present case there is a serious question of fact as to just what Dickson instructed the plaintiffs to do. While the three letters in question in part refer to the defendants, there is also language in them tending to indicate that Dickson ordered plaintiffs to proceed to trial. Under the circumstances, the letters should have been admitted and instructions given that they could not be considered in determining whether in fact there was a joint venture between Dickson and the defendants, but only to show what instructions were given to plaintiffs.

There is only one other evidentiary question seriously pressed and that pertains to the admissibility of the agreement of August 6, 1953, providing that Dickson was to assume all expenses of solicitation and litigation. Plaintiffs objected to its admission on the theory that it was not binding on them as it was not made in their presence and they had no notice of it. Actually, the exhibit was highly pertinent as to the existence of the joint venture and as such was helpful and not prejudicial to plaintiffs. However, if plaintiffs in fact had no notice of the lack of authority contained in the agreement, these restrictive provisions would not be binding upon them (Partnership Law, § 20, subds. 1, 4), and they were entitled to a clear charge to the jury on this point.

Finally, and perhaps most important of all, are the questions arising from the Trial Justice's charge to the jury. First, he failed to marshal the evidence. He stated, " You will note that I have refrained from discussing the evidence, except to state such facts as are not in dispute and the claims of the respective parties." In a case as complex as this, where there were many items offered in evidence, some admitted, some rejected, the failure to marshal falls short of the standards required (*Flanigan* v. *Cohu*, 2 A D 2d 461, 466).

Also, there was almost no distinction made between the first and second causes of action although the factual situations were

substantially different. Moreover, the second cause of action was hardly mentioned, despite the fact that most of the proof adduced was directed toward that phase of the case.

Further, the Trial Justice left to the jury as a question of fact, whether or not a joint venture existed between Dickson and the defendants to obtain control of the insurance company. Although this may have been proper as to the period preceding August 6, 1953, after that date there was no question of fact to be decided on the point. Defendants themselves introduced into evidence the joint venture agreement, albeit with the provision that Dickson would pay for legal and solicitation expenses. The Trial Justice did charge section 20 of the Partnership Law, but this portion of the charge was abstract. As stated above, the plaintiffs were entitled to a clear, specific charge on the applicability of that section to the evidence, especially since there is little, if any, evidence tending to show notice to the plaintiffs of the limiting clauses in the agreement.

Finally, the charge placed the right of the plaintiffs to recover on the very narrow basis of being engaged by the defendants and their promise and agreement to pay. While no exception was taken to use of the term " engaged," plaintiffs did request the Trial Justice to charge that " where services are performed for another or other benefits are received by him with his knowledge, and there is no evidence that such benefits were conferred gratuitously, the law implies a promise to pay for their reasonable value." While this language was abstract, it stated the general principle of law that applies to a case of this type, and the Trial Justice should have charged it either in that language, accompanied by an explanation of its meaning in the light of the evidence, or else in other appropriate language, so that if the jury found the requisite facts they could apply that principle.

For the above reasons, the judgment appealed from should be reversed and a new trial granted.

All concur. Present — WILLIAMS, P. J., GOLDMAN, McCLUSKY and HENRY, JJ.

Judgment and order denying motion for a new trial unanimously reversed on the law and facts and a new trial granted, with costs to appellants to abide the event. Orders denying motions for a directed verdict and for payment of expenses of experts affirmed, without costs.