**Danuta RYDUCHOWSKI,**
**Plaintiff–Appellant,**

v.

**THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY,**
**Defendant–Appellee.**

**Docket No. 99–7397**

United States Court of Appeals,
Second Circuit.

Argued: Oct. 19, 1999

Decided: Feb. 8, 2000

Thomas F. Bello, Staten Island, NY, (Demetrios G. Melis, of counsel), for Plaintiff–Appellant.

Anne M. Tannenbaum, New York, NY (Milton H. Pachter, Arthur P. Berg, & Megan Lee, New York, NY, on the brief), for Defendant–Appellee.

Before: KEARSE, MINER, and LEVAL, Circuit Judges.

MINER, Circuit Judge:

Plaintiff–Appellant Danuta Ryduchowski ("Ryduchowski") appeals from a judgment as a matter of law entered in the United States District Court for the Eastern District of New York (Gleeson, *J.*) setting aside a jury verdict in her favor on a claim asserted under the provisions of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. §§ 206(d), 215(a)(2). The court found no basis for the jury's determination that Ry-

duchowski's former employer, defendant-appellee The Port Authority of New York and New Jersey ("Port Authority"), had not established a valid merit system defense. Three claims were tried to the jury: (1) a Title VII claim based on alleged unlawful failure to promote in 1995, *see* Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (2) an EPA claim based on Ryduchowski's 1994 pay increase; and (3) an EPA claim with regard to Ryduchowski's 1995 pay increase. The EPA claims alleged that Ryduchowski received impermissibly lower pay increases in 1994 and 1995 than a male counterpart. The jury's verdict was favorable to the Port Authority with respect to all of Ryduchowski's claims except the 1995 EPA claim, the jury having determined by a special finding that the Port Authority did not establish its affirmative defense of a valid merit system. Thereafter, the Port Authority moved for judgment as a matter of law. The district court granted the motion, finding that although Ryduchowski and her co-worker, Jeffrey Lopez ("Lopez"), were similarly situated, they had received justifiably different performance evaluations pursuant to a valid merit system, which explained the differences in their 1995 salary increases.

For the reasons that follow, we reverse the judgment of the district court and reinstate the jury verdict. We remand to the district court so it may assess plaintiff's damages.

## BACKGROUND

The States of New York and New Jersey created the Port Authority by compact in 1921. Its purpose is to develop public transportation, terminal, and other facilities of commerce within the statutorily defined Port District that spans the two states. The Port Authority currently owns and/or operates thirty-three facilities within the Port District.

Ryduchowski is a woman of Polish origin who has a Masters of Science and a Ph.D. in Civil Engineering from the University of Warsaw. During the twenty years following her educational training, she gained practical experience and eventually became a licensed engineer in both New York and New Jersey. Between 1988 and 1995, she worked for the Port Authority as an engineer. In September 1995, plaintiff was terminated from her position with the Port Authority.

On November 14, 1996, Ryduchowski brought this action against the Port Authority. She alleged that the Port Authority had discriminated against her on the basis of her gender and national origin. She claimed that, while working at the Port Authority, she was subjected to insults, jokes, and harassment related to her gender and national origin. She asserted that as a result of this discrimination, the Port Authority failed to promote her and terminated her employment in violation of Title VII, and paid her less than a similarly situated male colleague in violation of the EPA.

The district court granted partial summary judgment to the Port Authority on November 19, 1998, rejecting every aspect of Ryduchowski's Title VII claim except the challenge to Lopez' 1995 promotion. With respect to Ryduchowski's EPA claims, the court granted summary judgment dismissing the 1993 EPA claim, but denied summary judgment as to the 1994 and 1995 EPA claims.

*The Trial*

On November 30, December 1, and December 2, 1998, the remaining claims were tried to a jury: (1) the Title VII failure to promote claim; (2) the 1994 EPA claim; and (3) the 1995 EPA claim. Ryduchowski prevailed solely upon the 1995 EPA claim. The evidence with respect to that claim, which we take in the light most favorable to Ryduchowski, focused on two principal issues: (1) Ryduchowski's job skills and performance evaluations and (2) the Port Authority's compensation system.

### A. The Evidence

#### (1) Ryduchowski's Job Skills & Performance Evaluations

Ryduchowski testified that when she was hired as an engineer in the Engineering Audit Division at the Port Authority, she was the only female of the approximately twenty engineers in the Division. Her duties required her to perform structural evaluations of various Port Authority bridges and buildings. She reviewed drawings and specifications, performed final inspections at construction sites, and drafted reports of her findings on any given project for submission to a senior engineer, who was responsible for a final report. During her first year, no one at the Port Authority complained about her written reports or her communications skills. In fact, she received a letter from her Manager, Mr. Rao ("Rao"), indicating that he and Mr. Buttling ("Buttling"), her supervisor,[1] were most pleased with her performance.

At the close of her second year of employment, in the summer of 1990, Ryduchowski received a more formal performance evaluation consisting of an evaluation sheet with multiple sections and corresponding ratings for each section. She also received in her yearly salary a merit increase that was tied to her overall rating on this evaluation. Her 1990 performance evaluation indicated that her reports were understandable and contained good thoughts, "but require[d] some editing and rewriting." With regard to this comment on her evaluation, Ryduchowski testified that she believed it was acceptable to submit draft reports that required editing and rewriting because sometimes the reports had to be prepared within a very short time frame. This view was supported by Rao, who testified that it was acceptable for a staff engineer's reports to require a little editing and rewriting. Ryduchowski's overall rating on the 1990 evaluation was "[c]ompetent and dependable level of performance," the third highest rating out of six.

During 1990, Ryduchowski's Division was moved from the Treasury Department to the Risk Management Division, resulting in the loss of its responsibility for plan reviews and final inspections. According to Rao, this affected Ryduchowski's work by placing an increased emphasis on writing.

During the 1991 evaluation period, Ryduchowski worked very closely with the senior engineer on her projects, Mr. Woods ("Woods"). During this time, Woods and Ryduchowski became very friendly. However, after Woods commented to her that the moments they spent together were the happiest of his life, Ryduchowski became concerned that Woods was interested in pursuing a romantic rather than professional relationship, and sought to "withdraw" from the situation.

When Ryduchowski received her evaluation for 1991, she had been marked lower in the Oral Expression category, from "understandable" and "organized" to "lacks clarity and conciseness." Likewise in the "Initiative/Dependability" category, she received a lower rating than she had in the 1990 evaluation. Most importantly, her overall rating had fallen in the 1991 evaluation to "acceptable," in contrast to her prior rating of "[c]ompetent and dependable."

"[S]hocked and surprised" by this "sudden change in [her] performance evaluation," Ryduchowski complained to her supervisor, Buttling. Buttling submitted her complaints to Rao, who then met with Ryduchowski. Ryduchowski told Rao that she felt she had been marked lower because of comments from Woods, who harbored ill will towards her because of a "personal situation." She also told Rao that she felt she was being discriminated against on the basis of her gender and

---

1. Rao's position as Manager was senior to Buttling's as Supervisor.

national origin, which had resulted in her not being given an opportunity to perform independent engineering evaluations. According to Ryduchowski, Rao told her that the evaluation would be upgraded and that she "should forget about th[e] situation."

After Ryduchowski's meeting with Rao, her 1991 overall rating was restored to the 1990 rating of "[c]ompetent and dependable." Rao testified that he changed her rating because an engineer's performance rating should not be lowered unless a supervisor had first spoken to the engineer and previously had made a written record of his concerns. He further explained that it was his practice to ask his supervisors to put written comments regarding an employee in the employee's personal file, so he could use them for future reference. The Port Authority never produced any written comments regarding Ryduchowski's performance apart from her performance evaluations.

Ryduchowski indicated that during the 1991–92 and 1992–93 evaluation years, as a result of her rejection of Woods, he excessively edited her reports, failed to give her enough time to complete her reports, and made inappropriate comments regarding her writing skills. Woods confirmed that in an effort to speed up the report process, he had asked Ryduchowski to prepare draft reports and told her "not to worry about how she wrote [them]." In this period, Ryduchowski heard Buttling say, on more than one occasion, that "white professional males" were becoming an "extinct species" because of preferential treatment for women and minorities. She also testified that she was afraid to complain about these statements. During both of these years, Ryduchowski again received overall performance ratings of "[c]ompetent and dependable."

In 1993, when Lopez was hired, Buttling commented to Ryduchowski that Lopez' last name was very important because he did not want to hire another woman, but by hiring Lopez, whose name indicated that he was a minority, he could neverthe-

less make a good impression on the Human Resources Division. When he was hired, Lopez' educational background consisted of undergraduate degrees in architecture and civil engineering but, unlike Ryduchowski, no graduate work. Lopez assumed a staff engineer position and duties comparable to those of Ryduchowski.

Around this time, Ryduchowski became the first engineer in her Division to work with a new computer system. As a result, Rao asked her to present a lecture on the new system to the entire Division. According to Ryduchowski, several of her colleagues congratulated her on the speech. At the close of the 1994 evaluation year, covering the period July 1993–94, Ryduchowski again received an overall performance rating of "[c]ompetent and dependable." She also received a notice stating that her salary would be increased by 3.5%. During this time period, Lopez and Ryduchowski performed similar duties. Nevertheless, Lopez received an overall performance rating of "exceeds most position requirements," the second highest mark out of six, and a salary increase of 4.7%.

During the 1995 evaluation period, the senior engineer position became available because of Buttling's retirement and Woods' promotion to Supervisor. Despite Ryduchowski's interest in the position, it was never publicly listed, nor was she given the opportunity to apply for the position. Instead, Lopez was selected for the position. Around this time, Ryduchowski overheard Woods telling Buttling not to give her a good performance rating because after Buttling left, Woods would "still [have to] deal with her, so [he could] run into some kind of problem[ ] if [Ryduchowski] has [sic] good performance."

After becoming the Supervisor, Woods made several negative comments to Ryduchowski concerning her Polish origin. Apparently, Woods came into Ryduchowski's work cubicle and told her that she should

write her reports in Polish because her English was so poor. After making some comments regarding Jewish people that Ryduchowski found offensive, he also stated that all Polish people were "instigators." Ryduchowski felt that she could not respond to these offensive comments because he was her Supervisor and if she "start[ed] a fight with him, it would be over, [her] performance would be downgraded, and [she] would be terminated." Additionally, in the summer of 1995, Ryduchowski received a vulgar cartoon in her work mailbox regarding a "Polish Shower." Rao, Buttling, and Woods all admitted seeing the cartoon before, but asserted that it had previously not contained the caption "Polish Shower." Buttling testified that he enjoyed those types of cartoons, but that he did not show this cartoon to Ryduchowski because it was not the type of thing "that you would show to a woman."

Ryduchowski's performance evaluation for 1995 once again rated her performance as "[c]ompetent and dependable." Thereafter she received a notice stating that her salary would be increased by 3.6%. For the same time period, Lopez received an overall performance evaluation of "exceeds most position requirements," and a merit pay increase of 4.4%.

### (2) The Port Authority's Compensation System

According to the testimony of Mr. Chanfrau ("Chanfrau"), Assistant Treasurer and General Manager of the Risk Management Division, each division at the Port Authority was permitted to award merit increases in 1994 and 1995; the amounts could total up to 3.5% and 3.2% of the division's aggregate salary for 1994 and 1995 respectively. Accordingly, the average merit increase granted to each employee was equal in those years to the overall merit increase percentage authorized, with the "better" employees receiving merit increases in excess of the average and other employees receiving merit increases below the average.

Since Ryduchowski was paid at grade B–92, she was covered by an internal policy relating to merit increases for employees in pay plan "B." The policy establishing the standards governing the merit increase program was contained in a written document. This document was the only one introduced in evidence that pertained to the program and provided, *inter alia,* as follows:

Merit increases should be based primarily on performance, with consideration also given to the employee's position in his/her salary range and attendance record. These increases are not automatic and all directors should review the job performance, attendance record and the present salary of each staff member to determine if the employee[']s contribution warrants an increase....

... Prior to an employee's merit review date, the supervisor reviews the employee's performance via the Performance Planning and Review process and completes the necessary forms, and the Merit Increase Recommendation. Both are then forwarded to the department's administrative section to certify that the PP & R forms are completed and filed in each department.

... The department's administrative section summarizes all merit increase recommendations....

... After review by the Employment Division for verification and accuracy the HR Director submits the appropriate recommendations to the AED/Administration, who in turn reviews [them] with the Executive Director for approval.

Chanfrau asserted at trial that Port Authority managers and supervisors were restricted in awarding merit pay increases that were out of line with an employee's performance rating. Based on Ryduchowski's overall rating of "[c]ompetent and dependable" and the overall Port Authori-

ty merit increase that year of 3.2%, Chanfrau contended that Ryduchowski should have received a merit pay increase in 1995 between 3 and 3.5%. Chanfrau also described a chart that indicated the appropriate range of merit pay increases for employees according to their performance rating. However, this chart was never produced at trial.

### B. The Verdict

The case was submitted to the jury via a special verdict sheet. The jury found for the Port Authority with respect to the Title VII claim. With regard to both the 1994 and 1995 EPA claims, the jury made specific findings that Ryduchowski and Lopez performed equal work under similar working conditions and that the Port Authority had not succeeded in establishing, by a preponderance of the evidence, its affirmative defense that Ryduchowski's lower merit increase was the result of "a valid merit system." However, the 1994 EPA claim had not been brought within the two year statute of limitations and thus required proof of a willful violation of the EPA. *See* 29 U.S.C. § 255(a). Since the jury did not find that the 1994 pay differential was willful, the jury's finding was favorable to Ryduchowski solely on the 1995 EPA claim. The jury was not asked to determine Ryduchowski's damages because the trial court instructed the jury that if its findings were favorable to Ryduchowski, then the court would determine her damages. Neither party objected to this instruction.[2]

*The District Court's Entry of Judgment as a Matter of Law*

Following the jury's verdict, the Port Authority filed a motion for judgment as a matter of law. On February 19, 1999, the district court granted the motion and set aside the jury's verdict. Acknowledging that it had "struggled with th[e] motion," the court found that it was "not in dispute

..., nor could it reasonably be" that Ryduchowski and Lopez performed equal work under similar circumstances during 1994 and 1995. The court then concluded that, "[e]ven viewing the evidence ... in the light most favorable to the plaintiff," the difference in the 1995 performance evaluations of Lopez and Ryduchowski was "plainly justified" because of Ryduchowski's difficulties with written and oral expression. It pointed out that Ryduchowski's argument, both to the jury and to the court at summary judgment, was that she should have received a larger increase because there may have been more money available in the division for pay increases. Finding this issue inapposite, the court stated that there was nothing in the record indicating that "the plaintiff should ... have gotten more than a 3.5% increase in 1995 based on her performance evaluation."

With regard to the merit system, the court held that "the only rational conclusion to be made on th[e] evidence [was] that the very modest difference, point eight percent, between the merit increases of plaintiff and Lopez in 1995 w[as] based on a valid merit system." Finding that "the case was tried on the issue of whether the Port Authority satisfied its burden of justifying the different merit increases by reference to a legitimate ... merit system," the court concluded that the Port Authority had met its burden. In particular, the court found no connection between the allegations of "anti-women animus" at the Port Authority and the award of merit increases. Noting that Ryduchowski had not argued that the Port Authority's merit system was a pretext for unlawful discrimination, the court found that in any event the evidence did not support such a determination. This appeal followed.

### DISCUSSION

 In this circuit it is well established that a trial court may only grant a

---

**2.** In fact, the parties agreed to eliminate any instruction on damages under the Equal Pay

Act from the jury charge.

motion for judgment as a matter of law if "there is such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result of sheer surmise and conjecture, or if the evidence is so overwhelming that reasonable and fair minded persons could only have reached the opposite result." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 56 (2d Cir.1993) (internal quotations and alterations omitted). *See also* Fed.R.Civ.P. 50(a) (judgment as a matter of law is only appropriate if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-moving] party"). In reviewing the district court's decision to set aside the jury's verdict and issue judgment as a matter of law, we must view the evidence in the light most favorable to Ryduchowski, the prevailing party before the jury. *See Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 161 (2d Cir.1998); *Logan v. Bennington College Corp.,* 72 F.3d 1017, 1022 (2d Cir.1996). Applying these precepts to the case at hand, we are of the opinion that the district court erred in setting aside the jury's verdict.

*The EPA's General Principles*

■ "The Equal Pay Act, passed by Congress in 1963, prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for 'equal work ...' " *Belfi v. Prendergast,* 191 F.3d 129, 135 (2d Cir.1999) (quoting 29 U.S.C. § 206(d)(1)). "The purpose behind the enactment of the EPA was to legislate out of existence a long-held, but outmoded societal view that a man should be paid more than a woman for the same work." *Id.; see also Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). To establish a prima facie violation of the EPA, a plaintiff must demonstrate that "i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *Belfi,* 191 F.3d at 135 (internal quotation omitted); *see also* 29 U.S.C. § 206(d)(1); *Corning Glass Works,* 417 U.S. at 195, 94 S.Ct. 2223. However, unlike Title VII, the EPA does not require a plaintiff to establish an employer's discriminatory intent. *See* 191 F.3d at 135–36; *Strecker v. Grand Forks County Social Service Bd.,* 640 F.2d 96, 99 n. 1 (8th Cir.1980) ("The [EPA] creates a type of strict liability; no intent to discriminate need be shown."), *implicitly overruled on other grounds by Pullman–Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

■ Instead, the EPA makes it illegal for an employer to pay unequal compensation to those of different genders for equal work, "except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). Once the employer proves that the wage disparity is justified by one of the EPA's four affirmative defenses, " the plaintiff may counter the employer's affirmative defense by producing evidence that the reasons the defendant seeks to advance are actually a pretext for sex discrimination." *Belfi,* 191 F.3d at 136 (citing *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 526 (2d Cir.1992)).

■ Despite the statute's reference to a merit system, and a defendant's need to establish its valid implementation as a defense to a prima facie violation of the EPA, "what constitutes a merit system, may not be so obvious." *EEOC v. Aetna Ins. Co.,* 616 F.2d 719, 725 (4th Cir.1980). Although our circuit has apparently never addressed the proper contours of the EPA's merit system defense and the caselaw outside our circuit is sparse, we are not without some guidance in our evaluation. Some of our sister circuits have established the rule that "a merit system must be an organized

and structured procedure whereby employees are evaluated systematically according to predetermined criteria." *Aetna Ins. Co.,* 616 F.2d at 725 (internal quotation marks omitted). *See also Maxwell v. City of Tucson,* 803 F.2d 444, 447 (9th Cir.1986) (quoting *Aetna Ins. Co.*); *Ottaviani v. SUNY at New Paltz,* 679 F.Supp. 288, 337 (S.D.N.Y.1988). Moreover, employees must be aware of the merit system and the merit system must not be gender based. *See Aetna Ins. Co.,* 616 F.2d at 725. The burden of establishing one of the four affirmative defenses is "a heavy one," *Timmer v. Michigan Dep't. of Commerce,* 104 F.3d 833, 843 (6th Cir.1997), because the statutory exemptions are "narrowly construed." *Aetna Ins. Co.,* 616 F.2d at 724 (citing *Hodgson v. Colonnades, Inc.,* 472 F.2d 42, 47 (5th Cir.1973)). We adopt these criteria in our analysis of Ryduchowski's claims.

*Analysis*

██ Here, it is uncontested that Ryduchowski established the prima facie elements of her claim. *See Ryduchowski v. Port Authority of New York & New Jersey,* No. 96–CV–5589, 1998 WL 812633, at *12 (E.D.N.Y. Nov.19, 1998) ("No dispute exists that (1) the Port Authority paid different wages to Lopez and plaintiff . . .; (2) Lopez and plaintiff performed equal work on jobs requiring equal skill, effort, and responsibility . . .; and (3) Lopez and plaintiff performed their jobs under equal working conditions."); Special Verdict, Sec. 3(a). The Port Authority's arguments to this court have failed to dispute any of the findings of the jury and the district court in this regard. Instead, the crux of this case is our assessment of whether the jury lacked an evidentiary basis for determining that the Port Authority failed to establish its affirmative defense of a valid merit pay system.

██ We conclude that the verdict was supported by the evidence at trial. The Port Authority had the heavy burden of establishing "an organized and structured procedure whereby employees are evaluated systematically according to predetermined criteria." This heavy burden extended not only to establishing that the Port Authority formulated an organized and structured system based on predetermined criteria, but also to proving that it *systematically* administered its plans for a merit system. Our review of the record compels the conclusion that there was ample evidence that the Port Authority failed to meet this burden. Even assuming that the compensation system was organized, structured, and based on predetermined criteria, it is clear that the jury could have reasonably concluded that Port Authority employees were not evaluated systematically. Without systematic evaluation, a *valid* merit system cannot be said to exist.

Based on the evidence submitted at trial, the jury could have found that the Port Authority failed, contrary to its written policy, to take into account employees' attendance records and positions within salary grade in determining merit increases. Although the lone document submitted at trial as to the administration of the Port Authority's merit system stated that these factors should be considered, *see supra* at 140, there was no evidence that these factors were actually considered. The yearly evaluation form, which contained numerous evaluation categories,[3] certainly contained no category for attendance or place within salary grade.

The jury could also have concluded that the Port Authority failed to properly correlate merit increases to an employee's evaluation. Chanfrau testified that, based on Ryduchowski's 1995 evaluation, her

---

**3.** These categories included the following: written communication, oral expression, initiative/dependability, interpersonal relationships, problem analysis/decision making, planning and organization, stress tolerance, leadership, management control/delegation, and decisiveness. The policy statement concerning the administration of the merit system was not part of this form.

merit increase should have been between 3 and 3.5%, but the jury could have reasonably concluded, in light of her receipt of a merit increase in 1995 outside this range, that this policy was not validly implemented.[4] Additionally, the Port Authority never produced the chart that supposedly specified the appropriate merit increase range for each performance evaluation rating.

Furthermore, the jury could have concluded that the Port Authority's detailed evaluation procedures were not systematically applied to all employees because of the gender prejudice of Ryduchowski's superiors, as seen in the actions and words of Buttling and Woods. The jury heard evidence that Woods attempted to negatively influence Buttling's evaluation of Ryduchowski in 1995. The jury also heard ample evidence that Buttling resented women in the workplace. Moreover, the jury heard evidence of how Rao altered Ryduchowski's 1991 evaluation in response to her concerns. The jury could have concluded that Ryduchowski's supervisors manipulated the evaluation process according to their personal whims and prejudices, and thereby prevented the merit system from being systematically applied.

The district court failed to recognize that, based on the evidence at trial, the jury could have reached the above conclusions in evaluating the Port Authority's merit system defense. Instead, the district court's judgment primarily relied upon Ryduchowski's allegedly inferior written and oral communications skills. While there was evidence that Ryduchowski's skills in these areas were subpar, the district court failed to appreciate that it was the jury's prerogative to discount or even to disbelieve this evidence. The jury heard that year after year Ryduchowski received an overall rating of "[c]ompetent and dependable."[5] Although the Port Authority proffered the explanation that Ryduchowski's duties changed over time, rendering her communications skills inadequate, the jury was entitled to find this argument unconvincing. Having rejected the proffered explanation, the jury could have reasonably concluded that Ryduchowski's lower performance evaluation in 1995, which led to her lower merit increase, was not the result of differences in performance, but rather differences in gender between her and Lopez.

The arguments raised by the Port Authority in support of its contention that the jury acted unreasonably are fourfold. The Port Authority contends that: (1) the .8% differential in the 1995 merit increases of Lopez and Ryduchowski was justified by their differences in performance; (2) the plaintiff was satisfied with her evaluations; (3) the alleged acts of discrimination were unrelated to the administration of the merit system; and (4) the plaintiff never asserted any claims of pretext. With respect to the first point, we have already shown that the jury had a basis for finding that the 1995 difference in the merit increases of Lopez and Ryduchowski was not justified by their differences in performance. Moreover, it was the Port Authority's burden to convince the jurors that it employed a valid merit system. It simply failed to meet this burden.

Second, we find no merit in the Port Authority's contention that Ryduchowski's supposed satisfaction with her performance ratings somehow conflicts with the jury's verdict. Even if the evidence showed that Ryduchowski was satisfied with her evaluations at the time, a proposition on which we express no view, the EPA contains no provision requiring a plaintiff to contemporaneously complain to her su-

4. Although her merit increase in 1995 was only .01% outside of the appropriate range, and in fact beneficial to Ryduchowski, the jury was entitled to take this disparity into account in considering the adequacy of the Port Authority's proof of a valid merit system.

5. During those years, excluding the 1991 evaluation that was subsequently revised, she was consistently rated "clear" and "convincing" in oral expression and four out of six years "understandable" and "organized" in written expression.

pervisors about her evaluation and unequal pay. Rather, it is sufficient for a plaintiff to timely assert her claim, present her complaints before the jury, and let the judicial system remedy any injustice. Here, Ryduchowski followed those procedures and obtained a verdict in her favor. The Port Authority was free to argue at trial, as it did, that Ryduchowski's alleged satisfaction with her evaluation showed the existence of a valid merit system. Yet the jury also was free to, and apparently did, reject this contention.

Third, as discussed above, there was sufficient evidence for the jury to conclude that gender-based discrimination affected Ryduchowski's performance evaluations and her merit increases. Fourth, the Port Authority's reliance on the district court's finding that plaintiff failed to allege pretext is misplaced. While Ryduchowski's evidence might have supported a finding of pretext, the jury did not have to reach the pretext issue, because it concluded that the Port Authority had failed to show the existence of a *valid* merit system. In considering this issue, the jury was entitled to take into account the demonstrated irregularities in the administration of the compensation system and the biases of the particular actors involved.

It therefore seems to us that the jury's verdict was not the "result of sheer surmise and conjecture," but instead a rational conclusion based on the evidence presented at trial. As the foregoing illustrates, the jury could have concluded that the Port Authority's merit system, while admittedly detailed, was not applied systematically, rendering a facially adequate merit system invalid as applied to Ryduchowski. While reasonable minds might disagree with the jury's verdict, it was not for the district court to substitute its judgment for that of the jury, absent circumstances indicating that the jury's verdict was without foundation. It was the Port Authority's burden to convince the jurors that it applied a valid merit system. The jury's verdict reveals that the Port Authority simply failed to meet this burden.

For the reasons discussed above, we hold that the jury's verdict was supported by the record and should be reinstated.

### CONCLUSION

In accordance with the foregoing, we reverse the judgment of the district court, reinstating the jury's verdict in favor of the plaintiff. We also remand to the district court so it may assess the appropriate measure of damages due the plaintiff.