**Sherri SWIHART, Plaintiff,**

v.

**PACTIV CORP. f/k/a Tenneco Packaging, Tenneco Packaging f/k/a Tenneco Inc., and Tenneco Automotive f/k/a Tenneco Inc., Defendants.**

**No. 3:00CV0258 (GLG).**

United States District Court,
D. Connecticut.

Feb. 13, 2002.

Simon I. Allentuch, Neubert, Pepe & Monteith, New Haven, CT, for Plaintiff.

Karlene J. Rogers, James M. Moriarty, Kelly Drye & Warren, Stamford, CT, Barbara E. Hoey, Kelly, Drye & Warren, New York City, Joseph M. Pastore, III, Brown Raysman Millstein Felder & Steiner, Hartsford, CT, for Defendants.

## DECISION

GOETTEL, District Judge.

This is wrongful termination and employment discrimination action brought by plaintiff, Sherri Swihart, against her former employer, defendant Pactiv Corp., and against defendants Tenneco Packaging (formerly known as Tenneco Inc.), and Tenneco Automotive Inc. (formerly known as Tenneco Inc.).[1] Plaintiff claims that she was discriminated against on the basis of her gender, and was then discharged in retaliation for her objection to certain discriminatory practices. The Complaint contains six claims for relief. The first and second claims allege retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (**"Title VII"**) and in violation of 42 U.S.C. § 1981 (**"Section 1981"**). The third claim alleges discrimination on the basis of gender in violation of Title VII. The fourth claim alleges discrimination on the basis of gender in violation of the Equal Pay Act, 29 U.S.C. § 206(d) (the **"EPA"**). The fifth claim alleges that plaintiff's termination and defendant's continued retaliation thereafter violated public policy. Defendant have moved for summary judgment on five of the six counts of the Complaint.[2] For the reasons set forth below and in footnote 1 above, defendant's motion [**Doc. # 33**] is GRANTED in part and DENIED in part.

## I. *Summary Judgment Standard*

A motion for summary judgment may not be granted unless the Court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it may affect

---

1. Plaintiff was employed from April to December 1997 by Tenneco Packaging, which was then a subsidiary of Tenneco Inc. In 1999, Tenneco Packaging was spun off by Tenneco Inc. and the new entity was named Pactiv Corp. At the time of plaintiff's employment, Tenneco Automotive Inc. was a separate subsidiary of Tenneco Inc. Tenneco Inc. and Tenneco Automotive did not hire plaintiff, and they did not have any control over the human resources policies or employment decisions of Tenneco Packaging (now known as Pactiv Corp.). (Defs.' Rule 9(c)1 Statement of Facts ¶¶ 5–11.) Defendants have moved for summary judgment on the Complaint as to defendants Tenneco Inc. and Tenneco Automotive on the ground that these entities were not plaintiff's "employer" and were not involved in any of the employment decisions or policies at Pactiv. Plaintiff agrees with defendants on this point. Consequently, the Court grants defendants' motion for summary judgment on all counts with respect to Tenneco Inc. and Tenneco Automotive. Since this decision relates only to Pactiv, defendant is hereinafter referred to in the singular. Furthermore, any reference in this decision to Tenneco Packaging is a reference to the entity now known as Pactiv Corp.

2. The sixth claim seeks attorneys' fees and experts' fees pursuant to 42 U.S.C. §§ 1981, 1981(a).

the outcome of the suit under governing law. *Id.*

The burden of demonstrating the absence of a genuine dispute as to a material fact rests with the party seeking summary judgment, in this case defendant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Defendant must identify those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The nonmovant, plaintiff, "must do more than present evidence that is merely colorable, conclusory, or speculative and must present 'concrete evidence from which a reasonable juror could return a verdict in [her] favor ...'" *Alteri v. General Motors Corp.,* 919 F.Supp. 92, 94–95 (N.D.N.Y.1996) (quoting *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505).

In assessing the record to determine whether there are any genuine issues of material fact, the Court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. *McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir.1997). Additionally, the Second Circuit has held that a district court should exercise particular caution when deciding whether summary judgment is appropriate in an employment discrimination case. *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994). Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's documents, a trial court must be particularly cautious about granting summary judgment when the employer's intent is at issue. Affidavits and depositions must be scrutinized for circumstantial evidence which, if believed, would show discrimination. *Id.*

Accordingly, we set forth the facts in the light most favorable to plaintiff.

## II. *Facts*

The Court accepts the following facts as true, except where noted, for the purposes of defendant's motion for summary judgment.

Plaintiff was employed in April 1997 by Tenneco Packaging. (Defs.' Rule 9(c)1 Statement of Facts ¶ 18.)[3] There is a dispute as to whether plaintiff was hired as a temporary employee and later offered a permanent position, or whether she was hired to replace Thomas Ryer ("Ryer"), who had been in charge of human resources at the packaging plant. (Defs.' ¶¶ 15, 17; Pl.'s ¶¶ 15, 17.) It is undisputed, however, that when plaintiff was hired by Carl Santoro, manager of the packaging plant, she started in a temporary capacity in April 1997 and was offered "regular" employment three months later. (Defs.' ¶¶ 17, 34; Pl.'s ¶ 17.) Plaintiff accepted defendant's offer of $30,000 per year. (Pl.'s ¶ 37.) Initially, Santoro offered plaintiff a position as "Manufacturing Support Specialist," the lowest of the three

---

**3.** Defendant' Rule 9(c)1 Statement of Facts is hereinafter referred to as "Defs.' ¶ ___."

Plaintiff's Rule 9(c)2 Statement of Facts is hereinafter referred to as "Pl.'s ¶ ___."

generic titles at Tenneco used for "exempt" administrative staff. (Defs.' ¶ 35.) There is a dispute as to what title Santoro then offered plaintiff, but the record is clear that she was ultimately given the title "Management Team Specialist." (Pl.'s ¶ 36.) There are several other disputed facts relating to plaintiff's employment and her and Ryer's duties and work experience.[4] Santoro's behavior toward plaintiff or in her presence or toward other minority employees is also disputed.[5] (Defs.' ¶¶ 48, 49, 98; Pl.'s ¶¶ 48, 49, 98.)

During her tenure at Tenneco Packaging, plaintiff talked to Santoro about two employees' salaries and discussed with him the possibility of giving those employees an increase. (Defs.' ¶¶ 76, 89.) There is a dispute as to whether plaintiff discussed the employees' race or gender with Santoro or anyone else or whether she discussed the salaries or job classifications of any other employees with Santoro. (Pl.'s ¶ 94, 97, 102.) The reasons for certain salary discrepancies at the plant are also disputed. (Defs.' ¶¶ 26, 27, 31, 32, 39; Pl.'s ¶¶ 26, 27, 31, 32, 39.)

Towards the end of 1997, Geoffrey Gruelich ("Gruelich"), Tenneco Packaging's Area Manufacturing Manager, concluded that the plant's fixed costs were too high and directed Santoro to reduce overhead costs, which included salaries. (Defs.' ¶¶ 50, 51.) Ultimately, Gruelich approved Santoro's decision to eliminate three positions at the plant, including plaintiff's. (Defs.' ¶ 62.) How Santoro reached that decision (the steps he took and the factors he took into account) is in dispute. (Defs.' ¶¶ 52–59; Pl.'s ¶ 52–59.) Defendant's contention that Gruelich was not aware of plaintiff's complaints about wage levels at the plant is also disputed. (Pl.'s ¶ 63.)

After plaintiff's position was eliminated, no one was hired to replace her; instead, her duties were simply divided up among the existing staff. (Defs.' ¶ 67.) Plaintiff seems to suggest, however, that someone might have been hired to replace her some time later but does not provide any evidence to support this allegation. (Pl.'s ¶ 70.)

## III. *Discussion*

### a. *Title VII and Section 1981 Retaliation Claims*

■ Defendant has moved for summary judgment on Claims I and II of the Complaint as to Tenneco Packaging on the ground that plaintiff cannot establish a prima facie case of retaliation under Title VII and Section 1981. Defendant also as-

---

**4.** For example, defendant has characterized Ryer as a "manager," a fact that plaintiff disputes. According to plaintiff, Ryer's title was "Manufacturing Team Specialist" and he was earning approximately $40,000 in early 1996. (Pl.'s ¶¶ 27, 30.) Defendant claims that plaintiff had no human resources experience prior to working for Tenneco Packaging. (Defs.' ¶ 16.) Plaintiff disputes this by pointing out that she had managed other employees during her career. (Pl.'s ¶ 16.) Defendant alleges that Santoro did not consult with anyone else at Tenneco Packaging when setting plaintiff's salary, nor did he review any salary grades; instead, he set her starting salary based on the responsibilities of the position and what he perceived the market to be at the time. (Defs.' ¶¶ 38, 39.) Plaintiff

has produced evidence, however, that Santoro was at least aware that the salary range for Mr. Ryer's "Manufacturing Team Specialist" position was between $35,128 and $52,681. (Pl.'s ¶ 38.)

**5.** Plaintiff also brings to the Court's attention certain discriminatory remarks about women made by Santoro to another co-worker. (Pl.'s Mem.Opp.Summ.J. at 6.) However, these remarks occurred long after plaintiff's termination, and they shed no light on whether Santoro's decision in setting plaintiff's salary was motivated by any kind of discriminatory intent. Therefore, they are not relevant to plaintiff's discrimination claim.

serts that it has provided sufficient admissible evidence that it had legitimate, non-discriminatory reasons for terminating plaintiff.

■■■ Title VII protects not only plaintiff's underlying right to be free from certain forms of discrimination, but also her right to complain about treatment that she perceives as violating that right. The *McDonnell Douglas* burden-shifting framework is used to evaluate Title VII retaliation claims as well as discrimination claims. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *Sumner v. United States Postal Serv.*, 899 F.2d 203, 208 (2d Cir.1990). Under this framework, plaintiff has the initial burden of production and she must demonstrate that (1) she engaged in an activity protected by Title VII; (2) her employer was aware of that activity; (3) she suffered an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir.2001); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996).

As with discrimination claims, once plaintiff establishes her prima facie case, the burden shifts to defendant to present a legitimate, non-retaliatory reason for the adverse employment action. Then, if satisfied, the burden shifts back to plaintiff to show that defendant's explanations are pretext for the true discriminatory motive. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 130 (2d Cir.1996). Plaintiff's evidence, including that establishing her prima facie case, must show circumstances that would be sufficient to permit a rational finder of fact to infer that her termination was more likely than not based in whole or in part on retaliation. *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097; *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir.1997); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir.1995).

Defendant argues that plaintiff did not engage in a protected activity because she did not raise the issues of gender or racial discrimination when she complained that certain employees were being underpaid. However, defendant has not established that there is no material issue of fact on this point. Plaintiff claims that it was clear that she believed that discrimination was the reason certain employees were being underpaid. (Pl.'s Mem.Opp.Summ.J. at 6.) Defendant also argues that even if she did engage in a protected activity, plaintiff has not shown that defendant was aware that she was engaging in such activity. Plaintiff has produced evidence that she made defendant aware that she was complaining about the fact that certain employees were being paid less than other employees and that race and gender seemed to be a factor. (*Id.* at 7–8.) The question of whether plaintiff was engaging in a protected activity and whether defendant was aware that she was doing so appears to be a material issue of fact in dispute.

Defendant also argues that it has produced evidence that plaintiff was terminated for legitimate, non-retaliatory reasons. However, plaintiff has also produced evidence that, under the circumstances, could lead a reasonable jury to conclude that defendant's economic reasons for eliminating plaintiff's job were merely pretextual and that retaliation was a factor in defendant's decision to terminate plaintiff. (Pl.'s Mem.Opp.Summ.J. at 9–11.)

In sum, drawing all inferences in her favor, we hold that plaintiff has set forth

sufficient evidence to raise a triable issue of fact as to whether her being terminated was in retaliation for her complaining about discriminatory practices at the plant. Accordingly, defendant's motion for summary judgment on Claims I and II is denied.[6]

### b. *Title VII Gender Discrimination Claim*

■ Plaintiff alleges that she was discriminated against because of her gender in violation of Title VII in that she was paid less than male employees performing jobs with equal responsibility and requiring equal skill. Plaintiff's initial burden of making out a prima facie case of discrimination is very similar to that for retaliation claims. She must show that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, (4) under circumstances giving rise to an inference of discrimination. *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. 1817; *Austin v. Ford Models, Inc.,* 149 F.3d 148, 152 (2d Cir.1998).

Despite defendant's contention to the contrary, we find that plaintiff has indeed established the fourth element of her prima facie case. She has met her *de minimis* burden of showing circumstances that would allow a rational fact finder to infer that defendant had a discriminatory motive in paying her less than her male predecessor, Ryer. Defendant may rebut plaintiff's prima facie case by producing evidence to show a legitimate, non-discriminatory business reason for the disparity in salary. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1115 (2d Cir.1988). Defendant need not prove this point at this stage but must provide "clear and specific" explanations to dispel the inference of discrimination raised by plaintiff's prima facie case. *Id.* (quoting *Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.1985)). Defendant relies on the broad assertion that plaintiff's salary was determined by a combination of factors, including her background and skills, and the duties of the job. However, defendant's proffered explanation is inadequate to dispel the inference of discrimination for the purposes of this summary judgment motion. Defendant provides no clear explanation for why plaintiff's salary was set as low as it was nor why it continued to be significantly lower than Ryer's, even after a 9.3 percent raise in August 1997. There is a material issue of fact as to whether plaintiff was hired to replace Ryer and whether her duties were substantially similar to Ryer's duties. (Pl.'s Mem.Opp.Summ.J. at 2–5.) Similarly, there is a material issue of fact as to whether defendant's proffered non-gender-related reasons for the salary discrepancy were merely a pretext for a discriminatory motive. (*Id.*) Accordingly, defendant's motion for summary judgment on Claim III is denied.

### c. *Equal Pay Act Claim*

■ Plaintiff has also alleged a violation of the Equal Pay Act (the "EPA"), 29

---

**6.** Section 1981 provides, inter alia, that "[a]ll persons ... shall have the same right in every State and Territory to make and enforce contracts, ... and to the full and equal benefit of all laws ... as is enjoyed by white citizens...." The Second Circuit has held that white persons have standing to sue under Section 1981 for injuries resulting from retaliation for their activities in vindicating the Section 1981 rights of non-white minorities. *Pettman v. U.S. Chess Federation,* 675 F.Supp. 175 (S.D.N.Y.1987) (citing *DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, 312 (2d Cir. 1975)). Plaintiff's Claim II survives defendant's summary judgment motion because plaintiff has raised material issues of fact as to whether she was terminated because of her actions in advocating the Section 1981 rights of black and Hispanic co-workers.

U.S.C. § 206(d). The EPA prohibits employers from discriminating among employees on the basis of gender by paying higher wages to employees of the opposite sex for "equal work." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir.1999). In order to set forth a prima facie case of salary discrimination under the EPA, plaintiff must demonstrate (1) that the employer pays different wages to employees of the opposite sex; (2) that the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) that the jobs are performed under similar working conditions. *Id.* Unlike Title VII, however, the EPA does not require plaintiff to establish an employer's intent. *Id.* at 135–36. Once plaintiff makes out a prima facie case of discrimination, the burden then shifts to defendant to demonstrate that the wage disparity is due to a seniority system, a merit system, a system which measures earnings based upon quantity or quality of production, or a differential based on any factor other than sex. *Ryduchowski v. Port Auth. of New York and New Jersey*, 203 F.3d 135, 142 (2d Cir.2000). Once defendant proves that the wage disparity is justified by one of the four affirmative defenses of the EPA, plaintiff may counter by producing evidence that the reasons defendant seeks to advance are actually a pretext for gender discrimination. *Id.*

It is undisputed that plaintiff and Ryer were paid different wages. However, as discussed above, there is a genuine dispute as to whether plaintiff was hired to replace Ryer and whether plaintiff's skills, experience and responsibilities were substantially the same as Ryer's. The Court concludes that the issues of whether plaintiff and Ryer performed equal work on jobs requiring equal skill, effort, and responsibility, and whether the jobs were performed under similar working conditions, depend on the resolution of factual issues

not appropriate for summary judgment at this time. Accordingly, defendant's motion for summary judgment on Claim IV is denied.

### d. *Termination in Violation of Public Policy Claim*

 Connecticut recognizes a common-law cause of action for wrongful discharge based on a violation of public policy. *See Dallaire v. Litchfield County Ass'n for Retarded Citizens, Inc.*, No. 3:00cv1144 (GLG), 2001 WL 237213, at *3 (D.Conn.2001); *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385, 388–89 (1980); *Thibodeau v. Design Group One Architects, LLC*, 64 Conn.App. 573, 781 A.2d 363, 366 (2001). However, such a public policy cause of action is only available when a plaintiff is otherwise without a remedy. *Burnham v. Karl and Gelb, P.C.*, 252 Conn. 153, 745 A.2d 178, 183 (2000) (citing *Atkins v. Bridgeport Hydraulic Co.*, 5 Conn.App. 643, 501 A.2d 1223, 1226 (1985)). In this case, plaintiff has alleged that she was terminated in retaliation for complaining about discriminatory practices at the plant, which, if true, would violate important public policies embodied in Title VII. As defendant correctly asserts, because plaintiff already has an adequate statutory remedy, this Court will not recognize a separate claim for wrongful discharge in violation of public policy. The public policy against retaliation is adequately vindicated through Title VII and the remedies available thereunder. *See Dallaire*, 2001 WL 237213, at *4. Therefore, we grant defendant's motion for summary judgment as to the Claim V of plaintiff's complaint.

### IV. *Conclusion*

For the reasons set forth above, defendant's motion for summary judgment [**Doc. # 33**] is GRANTED in part and

DENIED in part. Summary judgment is GRANTED in favor of defendant Pactiv as to Claim V. Summary judgment is GRANTED in favor of defendants Tenneco Inc. and Tenneco Automotive Inc. as to all claims. Defendant's motion is DENIED as to Claims I, II, III and IV against defendant Pactiv. This case will be added to the Summer 2002 Trial Calendar.

SO ORDERED.