EDWARD P. MULLEN, Respondent, v. J. J. QUINLAN AND
COMPANY, Appellant.

Trial — effect of failure to ask to go to the jury — evidence — when
declarations of agent as to his authority, admissible against prin-
cipal — liability of stockbrokers for acts of agent.

Where neither party asks to go to the jury upon any question of fact, the
court is authorized to determine the case as one of law, upon the facts
in evidence, and if there is any evidence to sustain the determination
made, it is conclusive upon the parties.

An agent cannot create an authority in himself to bind another by assert-
ing his authority to do a particular act. His mere declarations are
incompetent to establish agency. When, however, a *prima facie* case
of agency has been made, the declarations of the person thus shown to
be acting as agent are admissible.

Where the relation between the parties is that of pledgor and pledgee, a
sale of stock without notice to or consent of the owner constitutes a
conversion where there is no agreement permitting it and no default on
the part of the owner justifying the act. In such case it is not neces-
sary for the owner to tender the balance of the purchase price of the
stock nor to make demand for the securities.

Where the evidence in an action for the value of stock sold without
authority showed that the recovery was based upon the highest market
prices within periods varying from a few days to within two months
of the conversion, it was within the rule. The trial court was author-
ized to determine, as a question of law, what was a reasonable time.

Defendant claimed that there was not sufficient legal proof that the per-
son, who transacted the business out of which the controversy arose,
was authorized to act as its agent. Upon examination of the evidence,
*held*, that it was sufficient to cast the burden upon defendant of rebut-
ting the inferences to be drawn therefrom, since it was, under the cir-
cumstances, presumably within its power to disclose the truth and,
having failed to do so, it justly subjected itself to all fair inferences
which those circumstances warranted. Plaintiff having made a *prima
facie* case, it behooved defendant, if not liable, to repel the presumptions
of liability.

*Mullen* v. *Quinlan & Co.*, 124 App. Div. 916, affirmed.

(Argued March 5, 1909; decided March 23, 1909.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the third judicial department, entered Jan-

uary 9, 1908, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court and an order denying a motion for a new trial.

The causes of action stated in the complaint arose out of the alleged wrongful conversion by the defendant of certain shares of stock and of a certain quantity of wheat, which the · latter had purchased, acting as a broker, for certain customers and was carrying for them on margins of payments of a small percentage of their value. The complaint alleged that the defendant was a corporation, created under the laws of the state of Maine, and was conducting a stock brokerage business in the state of New York and elsewhere ; that its main office was in Boston, Mass., and that it had leased a private telegraph wire running from its office to the village of Glens Falls, in this state. Transactions in the purchase of stocks and of wheat for the plaintiff and for certain other persons by the defendant, through one Smith, who was in charge of a branch office of the defendant at Glens Falls, were set forth. It was alleged that deposits of moneys were made by the plaintiff and by such other persons, by way of margins, of percentages upon the purchases; that all demands for further margins were complied with ; that, on May 5th, 1906, the defendant, without their knowledge, or consent, had, wrongfully and fraudulently, sold the stocks and the wheat, and had appropriated to its own use the moneys deposited with it, and that it had, on that day, announced, over its private wire, that it had discontinued its wire and branch office. Demands by the plaintiff and by the other persons referred to upon the defendant for the delivery to them of the stocks and wheat purchased and held for them, and for the delivery of the moneys deposited, and the refusals of the defendant to comply therewith were alleged. It was, further, alleged that, after the sales by the defendant, as set forth, the stocks and the wheat had advanced in price and that the plaintiff and the other persons referred to had suffered loss and damage through the defendant's wrongful acts. The plaintiff alleged that, by assignments, he had become the owner of the claims of the

other persons mentioned and he demanded a money judgment against the defendant. The defendant's answer admitted the allegations as to its corporate existence and business; that its main office was connected with Glens Falls by a private telegraph wire and, then, denied all other allegations of the complaint. At the trial the plaintiff gave evidence tending to show that the office in Glens Falls, through which the plaintiff and his assignors had conducted their transactions in stocks and grains, was managed by a person named Mel Smith and that he was acting as the agent of the defendant. The evidence showed the details of these transactions and that suddenly, on May 5th, 1906, without previous notice, and without the consent of the plaintiff, or of his assignors, the stocks and wheat, which had been bought for them, were sold out by defendant and that the office was closed. Evidence was given as to the highest prices at which such stocks and grain had sold between May 1st and July 1st of the year. When the plaintiff had rested his case, the defendant moved for a nonsuit and the motion was denied. The defendant then rested his case, without offering any evidence. The plaintiff, thereupon, moved for the direction of a verdict. This motion was granted and the trial court directed a verdict for the plaintiff in the amount established by the evidence as the loss sustained. To this direction the defendant excepted. The judgment recovered by the plaintiff was affirmed by the Appellate Division, in the third department, and the defendant has further appealed to this court.

*John G. Van Etten* for appellant. No legal proof was given showing that Mel Smith was authorized to act as agent of the defendant or to represent it in any respect. (4 Thompson on Corp. §§ 4884, 4886; *Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.*, 13 N. Y. 600; *Leary* v. *A. B. Co.*, 77 App. Div. 6; 1 Am. & Eng. Ency. of Law [2d ed.], 964; *Bickford* v. *Menier*, 107 N. Y. 490; *Edwards* v. *Dooley*, 120 N. Y. 540; *Brown* v. *Cone*, 80 App. Div. 413; *Taylor* v. *Comcl. Bank*, 174 N. Y. 181.) It was substantial error of

the court to receive testimony of the declarations and admissions of Mel Smith tending to prove his agency under the objections and exceptions of the defendant. (*Taylor* v. *Comcl. Bank*, 174 N. Y. 181.) The plaintiff and his assignors having made no tender of the balance of the purchase price of said stocks cannot recover the margins deposited. (*Holman* v. *Goslin*, 103 App. Div. 606 ; *Markham* v. *Jaudon*, 41 N. Y. 235.)

*Erskine C. Rogers* for respondent. The plaintiff proved a *prima facie* case of agency. (*La Marchant* v. *Moore*, 150 N. Y. 209 ; *Masterson* v. *Boyce*, 29 Hun, 456 ; *Kayton* v. *Barnett*, 116 N. Y. 622 ; *White* v. *Miller*, 71 N. Y. 118 ; *Coleman* v. *Bank of Elmira*, 53 N. Y. 388 ; *Smith* v. *N. Y. S. & P. C. H. Co.*, 70 Hun, 597.) The presumption of Smith's agency arose on account of the failure of defendant to offer any proof on that subject. (*McGuire* v. *H. F. Ins. Co.*, 7 App. Div. 575.) No tender of the balance of the purchase price of said stocks was necessary. (Dos Passos on Stock Brokers, 692 ; *Markham* v. *Jaudon*, 41 N. Y. 235 ; *Cornwell* v. *Haight*, 21 N. Y. 462 ; *Shaw* v. *Republic Ins. Co.*, 69 N. Y. 286 ; *Kilpatrick* v. *Dean*, 3 N. Y. Supp. 60 ; *Stokes* v. *Mackay*, 147 N. Y. 223 ; *Baker* v. *Drake*, 53 N. Y. 211 ; *Gillette* v. *Whiting*, 120 N. Y. 402.) The proper rule of damages was applied. (*Baker* v. *Drake*, 53 N. Y. 211 ; *Gruman* v. *Smith*, 81 N. Y. 25 ; *Wright* v. *Bank*, 110 N. Y. 237.)

GRAY, J. The principal question for our consideration, upon this appeal, is whether the evidence adduced by the plaintiff made out a case against the defendant and justified the direction of the verdict for the plaintiff. It is contended, on behalf of the defendant, that the evidence was insufficient to prove that Smith was the defendant's agent in the transaction of the brokerage business conducted at the Glens Falls office. Upon the conclusion of the plaintiff's case, the defendant's counsel moved for a nonsuit upon this and other grounds.

The motion was denied and exception was taken. The defendant then rested; offering no evidence. Whereupon, the plaintiff moved for the direction of a verdict in its favor; the trial court granted the motion and the defendant excepted. As neither party had asked to go to the jury upon any question of fact, the court was authorized to determine the case, as one of law, upon the facts in evidence, and if there was any evidence to sustain the determination made, it is conclusive upon the parties. The defendant, in effect, by requesting the court to determine the case upon his motion for a nonsuit, treated the questions as purely legal and acquiesced in their disposal by the court. The exception to the direction of a verdict for the plaintiff avails, only, to bring up the question of the sufficiency of the evidence. (*Barnes* v. *Perine*, 12 N. Y. 18; *Dillon* v. *Cockcroft*, 90 ib. 649.) The appellant does not appear to question this rule and relies upon the absence of "legal proof * * * showing that Smith was authorized to act as agent of the defendant" and upon the inadmissibility of his declarations to show authority.

The difficulty confronting the plaintiff, in making out a case, was not inconsiderable. The defendant was a foreign corporation, having its principal office in Boston. While admitting in its answer that its office was connected with Glens Falls through the lease of a private telegraph wire, all other allegations as to its connection with, or responsibility for, Smith's acts were denied. The plaintiff, however, succeeded in showing that the office in Glens Falls had been in existence for some time and had several signs about it, upon which, in large letters, appeared the name of the defendant; that the Western Union Telegraph Company had leased to the defendant a private wire running into the office; that the defendant kept a deposit with a bank in Glens Falls; that in the course of the bank's dealings with the defendant, it had furnished to Smith, at least once a week and sometimes oftener, drafts to the order of the defendant and had received and cashed drafts sent by the defendant to him and that these transactions ceased on May 5th, 1906, the date when the office

8

was closed. The writings, or contracts, which evidenced the transactions of purchase by the plaintiff, or by his assignors, bore upon each the name of Smith " correspondent J. J. Quinlan & Co., Boston, Mass." It was shown that, at the time of the transactions in question, two customers of the office, who had received from Smith similar contracts, evidencing purchases of stocks for their accounts, had sent an attorney to Boston and that, within a few days after the closing of the office, they had been settled with by the defendant and had received their certificates through the bank in Glens Falls ; upon their paying to the defendant the balances due upon the purchases. This evidence sufficiently justified the inference that Smith was representing the defendant. The circumstances, which were disclosed by the evidence, taken together, imported an agency in Smith and that he was conducting a branch office of the defendant's business. Assuming that the evidence may be regarded as slight, it was sufficient, under the circumstances, to cast the burden upon the defendant of rebutting the inferences, if untrue, by other evidence showing the truth. It was, presumably, within the power of the defendant to disclose the truth as to its relations with Smith and, if depending upon an inability on the part of the plaintiff to prove its case and refusing to give evidence in explanation of circumstances tending to connect it with the ownership of the business of the branch office, it subjected itself, and justly so, to all fair inferences, which those circumstances warranted. Its refusal to give any evidence was a circumstance, which might be taken into consideration, and that presumptions, unfavorable to it, might be indulged in upon the evidence, was a consequence to be expected. The plaintiff was only required to make out a *prima facie* case and, having done so, it behooved the defendant, if not liable, to repel the presumptions of liability.

So, when testimony by the plaintiff as to conversations with Smith, concerning the defendant, its business, his agency and the closing of the office by its orders, was admitted over the defendant's objection, if nothing more had been shown than

the plaintiff's transactions with Smith, the admission would
have presented a material error. The mere declarations of
Smith to the plaintiff would have been incompetent to estab-
lish his agency for the defendant. An agent cannot create an
authority in himself to bind another by asserting his authority
to do the particular act. When, however, the evidence of the
conversations with Smith was admitted, a *prima facie* case
had been made to the effect that there was some connection
between the defendant and Smith and that responsibility for
some of the brokerage transactions had been recognized. To
admit the declarations of Smith, therefore, was not error. It
was proper as supplementing the previous evidence.

It is, also, contended on behalf of the defendant that the
failure of the plaintiff and of his assignors to make a tender of
the balance of the purchase price of the stocks was fatal to a
recovery. This action was in trover, for the conversion of the
securities purchased for the plaintiff and for his assignors,
and, there having been an actual conversion, a demand upon
the defendant was unnecessary to render it liable. This rule
is well settled. (See Amer. & Eng. Encyc. of Law [2d ed.],
vol. 28, p. 686 where cases collected.) The property in the
stocks purchased by the defendant was in the plaintiff and
his assignors, and the relations between the parties were those
of pledgors and pledgee. (*Markham* v. *Jaudon*, 41 N. Y. 235 ;
*Content* v. *Banner*, 184 ib. 121.) The sale, therefore, without
notice to, or the consent of, the plaintiff and his assignors con-
stituted a conversion. There was no agreement permitting it
and there was no default on their part justifying the act. No
error was committed with respect to the question of damages.
The evidence showed that the recovery was based upon the
highest market prices within periods varying from a few days
to within two months of the conversion and it was quite within
the rule in the cases. (*Baker* v. *Drake*, 53 N. Y. 211 ;
*Wright* v. *Bank of the Metropolis*, 110 ib. 237.) In the
situation of the case, the trial court was authorized to deter
mine, as a question of law, what was a reasonable time.

It is not necessary to say that all of the rulings upon the

trial were correct; but none was of such materiality as to justify the ordering of a new trial.

I think the judgment was right and that it should be affirmed by this court.

Cullen, Ch. J., Edward T. Bartlett, Werner, Willard Bartlett, Hiscock and Chase, JJ., concur.

Judgment affirmed, with costs.