OPINION OF THE COURT
John V. Vaughn, J.
In this action for compensatory and punitive damages, flowing from the conversion of the plaintiff’s property, this court (Charles R. Thom, J.), on February 14, 1980, granted plaintiff summary judgment on the issue of conversion, severed the counterclaims and directed an assessment of damages. Pursuant to that order, a trial on the issue of damages was held in this court.
The function of an award of damages in an action for conversion is to indemnify the injured party by awarding him the value of the converted property. Where the nature of the goods involved is such that they are readily exchanged in the marketplace, the measure of damages is the fair market value of the goods at the time of conversion (Mul-
*867 len v Quinlan & Co., 195 NY 109) which is generally the price at which the goods can be replaced in the market (Wallingford v Kaiser, 191 NY 392). In this case, the evidence established the price at which the converted law books would be purchased and sold in the secondary market by a used book dealer. The significant difference in value between the price the company would pay and the price it would sell these books was attributed to the cost of maintenance, upkeep, storage and profit. The court finds that the market value of the converted books in this case is the cost of replacement by the plaintiff in the used book market and not the lower market at which the used book dealer would purchase the volumes (see Rosenthal v Finkelstein, 164 NYS 41; Wehle v Haviland, 69 NY 448). Plaintiff is not in the used book business and would have to pay the higher cost in order to replace his library. The value of these books is found to be $6,989, computed as follows:
New York Supplement, 1st and 2nd $2,200
Shepard’s New York Supplement & Statute
Citations 120
McKinney’s New York Consolidated Laws 500
McKinney’s Session Laws, 1955 thru current 125
Abbott’s New York Digest, 1st and 2nd, new
edition in progress 250
Bender’s Forms to Consolidated Laws 250
West’s McKinney’s CPLR Forms 75
Bender’s New York Civil Practice 450
Bender’s Forms of CPLR 250
Bender’s Forms of Pleadings 250
Bender’s UCC, 14 volumes 100
Bender’s New York Evidence 150
White on Corporations 150
Warren Heaton New York Surrogates’ Practice 150 Warrens Weed New York Real Property 150
Nichols Eminent Domain 275
Rabkin & Johnson Current Legal Forms 400
Clark’s Water & Water Rights 75
Shepard’s Ordinance Law 175
Shepard’s New York Law Locator 125
Gordon & Rosenfield Immigration Law 120
Rathkopf, The Law of Zoning & Planning 85
*868 Lindey, Separation Agreements 60
Medina Bostwick Lawyers Manual 50
Anderson, Zoning 35
Gordon’s Forms of Agreements 25
Marks, Maloney & Paperno, Mortgages & Mortgage Foreclosures 18
Warren on Negligence 150
Harris, Estates Practical Guide, 3 volumes 45
Acme, Charges to Jury, 2 volumes 26
Erwin, Defense of Drunk Driving 30
Schwartz, Auto Accidents 125
$6,989
There was also some evidence concerning the value of Antieau on Municipal Corporations at $75-80, which the court has not considered since it was not contained in the plaintiff’s claim. In addition, there was conflicting evidence concerning the replacement cost of Clark’s Water & Water Rights which the court has resolved at the lower value.
There was similar evidence concerning the value of the office furniture and equipment, and the court finds the value thereof to be $5,870 computed as follows:
14 walnut bookcases $2,500
1 metal filing (5-drawer) cabinet 420
2 “Alma” walnut desks 1,100
2 Pendaflex filing cabinets 150
2 “Alma” Secretarial chairs 150
2 IBM typewriters 1,000
1 rolling step stand 25
1 metal filing cabinet (4-drawer) 250
Pitney Bowes Postage meter base 275
$5,870
The testimony established that the 14 used walnut bookcases were in excellent condition, but that there was no market value for them and that they could not be purchased in the used market. The cost of similar new bookcases would be $4,508 ($332 times 14). Where property has no recognized used or market value, the amount of recovery should not be restricted to the price which could be realized by a *869 sale in the market, and the owner should be allowed to recover the value to him based on his actual money loss (Lake v Dye, 232 NY 209). The original cost of the property, while of some significance, is generally insufficient by itself to establish the value of the converted goods since their deterioration or depreciation must be taken into account (O’Neill v Patterson, 26 Misc 3). In this case, the evidence established that the value of the bookcases in 1980 at a 15% discount was $3,832 — and that their value with a similar discount at the time of purchase in 1973, calculated on an annual 6% increase was approximately $2,549. They were in excellent condition at the time of the conversion and thus there was little-or no depreciation in value. The court finds the value to be $2,500.
In addition, the plaintiff seeks punitive or exemplary damages against these defendants. Such damages may be recovered for an act of conversion where the circumstances establish that the conversion was accomplished by malice or reckless or willful disregard of the plaintiff’s right (Manekas v Allied Discount Co., 6 Misc 2d 1079; cf. Zeppitella v Cappellino, 199 NYS 273). An act is done maliciously when it is done deliberately with knowledge of the plaintiff’s rights and with the intent to interfere therewith (see Lamb v Cheney & Son, 227 NY 418, 422). Exemplary damages are awarded in addition to compensatory damages in order to deter the defendants from a repetition of a wrongful act and to serve as a warning to others (Le Mistral v Columbia Broadcasting System, 61 AD2d 491). There is no set formula by which to determine the exact amount of punitive damages although they should bear some relation to the injury inflicted and the cause thereof (I.H.P. Corp. v 210 Cent. Park South Corp., 16 AD2d 461, affd 12 NY2d 329).
The court finds that exemplary damages should be awarded in this case. The court further finds that at the time of the plaintiff’s employment with the defendant firm, the defendants had incurred significant expenses in the establishment of their new Hauppauge office. At that time the parties agreed that the plaintiff would bring in his law library and office equipment for plaintiff and other members of the firm to use in that office and thus, save the de *870 fendant firm any additional expense. Defendants, in turn, agreed to maintain the library during the period of plaintiff’s employment, but the books, furniture and equipment were to remain the plaintiff’s. The court does not credit the defendants’ contention that these items were given to the firm, along with significant accounts receivable and substantial future client billings, although it finds that there was some discussion between the parties concerning the estimated amount of business the plaintiff would bring in. Such contributions are not normally made by employees, especially where they would exceed the value of the remuneration offered.
Approximately two years later, when plaintiff advised defendants that he was leaving the firm, he offered to offset the value of his property against a loan which four members of the defendant firm had made to him. He was advised that the loan was made by the individuals and not the law firm and should be handled separately. After the. plaintiff complied with that request and repaid the loan, there were further discussions about the firm’s purchase of plaintiff’s property. Indeed, one of the former employees of the firm testified that a partner had stated that they would probably buy the plaintiff’s “file cabinets”. During these discussions, plaintiff was asked to leave his property in the Hauppauge office for the sake of appearances since the firm was holding an important meeting with the trustees of the C.S.E.A. Welfare Fund, a major client, at that office on the following day. After that meeting, the defendants refused to discuss the matter any further and claimed that the property was theirs. Thus, the court finds that, contrary to the original agreement, the defendants willfully and maliciously refused to return the plaintiff’s property to him after categorizing him as an “ingrate” for his desire to leave the firm.
Although the plaintiff analogizes the conversion of his law books to a conversion of a worker’s tools, thereby depriving him of a livelihood, the analogy is not entirely correct. It is apparent that the law books were readily available in a local law library.
Accordingly, in considering the nature of the defendants’ willful and malicious conduct, the participation by each of *871 the six defendants in the decision to convert the property, and the harm, inflicted to the plaintiff, the court awards the plaintiff exemplary damages in the amount of $6,000.