OPINION OF THE COURT
John S. Lockman, J.
On May 2,1981, plaintiff, an attorney by profession, had in his possession a MasterCard credit card issued to him by defendant Citicorp Credit Services, Inc. (Citicorp) which he tendered to an employee of defendant Fortunoff, Inc., for the purpose of effectuating the purchase of certain merchandise on credit. The employee took steps to verify plaintiff’s credit and received instructions to retain the card and abort the transaction. The source of those instructions was ultimately defendant Citicorp. The employee followed her instructions. Based upon these events plaintiff has commenced a lawsuit in which he states causes of *858 action for conversion arid prima facie tort and seeks compensatory damages of $100,000 and exemplary damages of $5,000,000. Defendant Citicorp counterclaims for the balance due on plaintiff’s credit card at the time it was seized. Both parties apply for summary judgment as does defendant Fortunoff.
It is agreed that the credit card was provided to plaintiff by Citicorp with the original card having been issued perhaps 15 years ago. Citicorp contends that upon issuance and periodically thereafter it provided plaintiff with documents notifying him that the use of the credit card constituted an agreement with Citicorp, the provisions of which agreement were stated and included in the following: “We [Citicorp] can cancel or suspend your card at any time without prior notice or reissue a different one at any time. If we ask, you will destroy the card by cutting it in half and will surrender it to us or our agent, or mail it to us.” On May 2, 1981, charges totaling $2,218.92 had been incurred on plaintiff’s MasterCard. While not conceding knowledge of the fact, plaintiff does not deny that at the time his credit limit was $1,600. With respect to the amount of the charges plaintiff avers confusingly; “[Citicorp claims] that I owe CCSI $2,218.92, making reference to my examination before trial * * * The statement is not totally correct. I then admitted, as I now admit, that the charges totalling the sum of $2,218.92 were incurred; there is no admission that I then or now owe CCSI anything.” On balance the court finds that it is uncontested that credit limit on plaintiff’s MasterCard had been exceeded as of May 2, 1981.
In Wood v Holiday Inns (508 F2d 167), plaintiff checked into defendant hotel and presented an oil company credit card to effect payment on credit. He then retired for the evening. The following morning pursuant to direction from the card issuer the hotel’s employee secured and retained the credit card and denied plaintiff credit. In the ensuing lawsuit the Federal Court of Appeals held, inter alia; “The only relevant action undertaken by Gulf was its directive to pick up Wood’s credit card. However, by virtue of a statement contained on the card, and in the credit card application signed by Wood, Gulf retained the contractual *859 right to revoke the credit card without notice. Hence, Gulf’s decision to terminate Wood’s credit was not tortious”. (Supra, p 177.) In the instant case, however, the plaintiff would escape the impact of the similar provision contained in Citicorp’s “agreement” by denying that, in the 15 years during which he was the holder of a credit card issued by Citicorp, Citicorp ever informed him of the conditions and limitations on use of the credit card. “I stated then, as I now unqualifiedly re-state, that I received no documentation relating to the terms or conditions of the use of the involved credit card, either by mail or direct presentment to me, whatsoever.”
That a credit card is more than just a two-inch by three-inch piece of plastic has long been recognized. There are both Federal and State laws which govern the issuance and use of such credit devices. (General Business Law, § 29-A; Personal Property Law, art 10; US Code, tit 15, § 1601 et seq. [Consumer Credit Protection].) The banking regulations implementing the Federal “Consumer Credit Protection Act” (12 CFR 226.9 [a]) require that the issuer of a credit card notify cardholders of their rights and obligations in the use of credit cards at regular intervals of not less than 6 nor more than 18 months. Sections 413 and 414 of the Personal Property Law specify the terms which must be included in installment credit agreements and establish penalties for variations from the specified requirements. Despite these legal mandates, plaintiff appears to contend that defendant Citicorp, the issuer of “several hundred thousand” credit cards (Sternberg v Citicorp Credit Servs., 69 AD2d 352, 354) never provided him with written notice of the conditions and limitations on the use of its credit card.
While this court is precluded from resolving factual issues upon a motion for summary judgment, it is not necessary to determine the truth of plaintiff’s claim that he was never given notice of the conditions and limitations governing the use of the credit card. In the absence of a binding credit agreement, the “issuance of the credit card constitutes an offer of credit, and the use of the credit card constitutes the acceptance of the offer of credit.” (Empire Nat. Bank v Monahan, 82 Misc 2d 808, 809.) Absent an *860 agreement, Citicorp’s issuance of a credit card to plaintiff was merely an offer of credit which it could withdraw at any time. Even were plaintiff to argue that on May 2,1981, he accepted the offer prior to its withdrawal his remedy would be an action for breach of contract rather than for tort. (Luxonomy Cars v Citibank, 65 AD2d 549.)
Once the offer of credit which the credit card embodies is revoked, the credit card’s value is reduced to its intrinsic, as opposed to its symbolic, worth. Plaintiff contends that by taking the credit card defendants committed a tort of conversion. The measure of damages for a conversion is the value of the property at the time and place of the conversion. (Fantis Foods v Standard Importing Co., 49 NY2d 317, 326.) In the instant case Citicorp unquestionably created the credit card and then presented it to plaintiff. Its value other than as an offer of credit was at the time of its repossession nominal at best. Assuming that Citicorp lacked the right to retake possession, the injury to plaintiff was too insignificant to support an action for compensatory damages. There being no allegation or proof of malice or reckless or willful disregard of plaintiff’s rights, there can also be no recovery of exemplary damages. (See Ashare v Mirkin, Barre, Salzstein & Gordon, 106 Misc 2d 866, 869.)
Insofar as plaintiff’s claims are based upon a theory of prima facie tort, they must be dismissed. A prima facie tort is the intentional infliction of actual harm without excuse or justification by an otherwise lawful act. (ATI, Inc. v Ruder & Finn, 42 NY2d 454, 458.) It must emanate from a “‘disinterested malevolence’”. (Beardsley v Kilmer, 236 NY 80, 90.) Here defendant Citicorp clearly acted in its own economic interest to limit its credit exposure, a valid business interest. (Luxonomy Cars v Citibank, 65 AD2d 549, supra.) Accordingly, there was no prima facie tort.
While plaintiff opposes Citicorp’s counterclaim for the $2,218.92 due on his credit card, he does not deny any of the underlying purchases or the accuracy of the account. The absence of an underlying agreement, if established, would not relieve plaintiff of his obligation to pay for goods and services received on credit extended by Citicorp. (Empire Nat. Bank v Monahan, 82 Misc 2d 808, supra.) Accordingly, defendant is entitled to a judgment on its counterclaim.
*861 Defendants are granted summary judgment dismissing plaintiff’s complaint. Defendant Citicorp is awarded summary judgment on its counterclaim for $2,218.92. Defendants are awarded costs.