Annette KIELHURN, Plaintiff,

v.

Claudia GIAMMARINARO and Beverly Rossi, Defendants.

No. CV 98–6789 ADS.

United States District Court,
E.D. New York.

April 27, 2001.

220

Annette Kielhurn, Madison, CT, Pro Se.

Katich, Werse & Petillo, Fair Haven, NJ, By Stanley F. Werse, for the Defendant Claudia Giammarinaro.

Beverly Rossi, Bayshore, NY, Pro Se.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On January 19, 2001, a jury reached a unanimous verdict in this case, finding in favor of the plaintiff Annette Kielhurn ("Kielhurn" or the "plaintiff") on the breach of fiduciary duty, conversion, and unjust enrichment causes of action against the defendant Claudia Giammarinaro ("Giammarinaro" or a "defendant"). In addition, in the unjust enrichment cause of action against the defendant Beverly Rossi ("Rossi" or a "defendant"), the jury found in favor of Rossi. Lastly, the jury found in favor of Giammarinaro on the constructive trust cause of action. Presently before the Court are: (1) Kielhurn's motion for judgment as a matter of law in her favor on the constructive trust cause of action; (2) Kielhurn's application for an injunction preventing Giammarinaro from selling, transferring, or altering the property located at 21 East Halley Lane in Central Islip, New York; (3) Giammarinaro's motion to reduce the amount of compensatory damages awarded on the conversion cause of action to an amount not exceeding the sum of $4000; and (4) Giammarinaro's motion to set aside the punitive damages award.

## I. BACKGROUND

Briefly stated, Kielhurn and Giammarinaro had an intimate relationship that began in late 1992 and ended approximately four years later. During most of that time, Kielhurn lived with Giammarinaro in a house Giammarinaro owned jointly with her mother, Rossi, that was located at 21 East Halley Lane in Central Islip, New York. Kielhurn and Giammarinaro had joint bank accounts. Kielhurn testified that she gave Giammarinaro a 5% ownership interest in her cleaning business, which was called, "Ace Island Cleaners." She further stated that Giammarinaro had signing privileges on the Ace Island checking account, so that Giammarinaro could help her run the business when she was overworked. Kielhurn drew a salary from the Ace Island checking account.

In addition, Kielhurn claimed that she and Giammarinaro made mutual promises regarding the ownership of real estate. The plaintiff testified that on September 30, 1993, she transferred an interest in property located in Ocala, Florida (the "Ocala property") to Giammarinaro based on Giammarinaro's promise to convey an interest in the premises located at 21 East Halley Lane. However, when Kielhurn and Giammarinaro sought to transfer Rossi's interest in 21 East Halley Lane to Kielhurn, the bank denied Kielhurn's mortgage application. Because Kielhurn could not obtain part ownership of the house at 21 East Halley Lane, she asked Giammarinaro to convey her interest in the Ocala property back to Kielhurn, and she did so. Thereafter, on August 7, 1995, Kielhurn again was the sole owner of the Ocala property.

Kielhurn also testified that while she was living at 21 East Halley Lane, she made substantial improvements to the premises. Among other things, she

claimed to have installed a swimming pool, attached vinyl siding, and renovated the interior of the house. Kielhurn further asserted that she paid the property taxes and made mortgage payments while she lived there. Kielhurn claimed that she believed Giammarinaro would convey an interest in 21 East Halley Lane to her in exchange for the improvements and payments she made.

Because 21 East Halley Lane was her primary residence, Kielhurn moved her personal property into the house. During the trial, various witnesses stated that the following specific items belonging to Kielhurn were located at 21 East Halley Lane: a sofa, a chair, clothing, jewelry, a piano, two motorcycles, a pick-up truck, and a boat.

On July 29, 1996, the plaintiff was arrested in Virginia for possessing narcotics. Subsequently, she was convicted of a felony and served approximately three years in prison. Kielhurn claimed that after her arrest, she was emotionally distraught and asked Giammarinaro to manage her financial affairs while she was incarcerated. Moreover, Kielhurn explained that she trusted Giammarinaro to do so. In particular, Kielhurn stated that she asked Giammarinaro to oversee: (1) the Ocala property; (2) the sale of her interest in a coffee shop called St. John's Caterers; and (3) the Ace Island checking account. Kielhurn also trusted Giammarinaro to maintain the personal property that Kielhurn had left at 21 East Halley Lane. On October 18, 1996, Kielhurn conveyed the Ocala property to Giammarinaro, because she could not manage the property while incarcerated. Kielhurn alleged that while she was incarcerated, Giammarinaro sold the Ocala property to Kielhurn's estranged former brother-in-law for $10; signed checks on the Ace Island checking account to pay for her personal expenses; and kept proceeds from the sale of Kielhurn's interest in St. John's Caterers.

Several months after her arrest, Kielhurn was transferred from state to federal custody. She testified that she could not bring any personal belongings with her to federal prison and, therefore, gave Giammarinaro a diamond ring to safeguard. The plaintiff also stated that while she was in prison, her family tried to collect her personal property from 21 East Halley Lane, but Giammarinaro refused to return the property. Kielhurn also asserted that after she was released from custody, she attempted to retrieve her personal property, but Giammarinaro still refused to return it. Among the items that Giammarinaro purportedly retained control of were: the diamond ring Kielhurn allegedly entrusted to her; two motorcycles, a boat, furniture, a computer, and all of Kielhurn's clothing.

Following eight days of trial, five causes of action were submitted to the jury: (1) constructive trust against defendant Giammarinaro with regard to the Central Islip property; (2) breach of fiduciary duty against defendant Giammarinaro; (3) conversion against defendant Giammarinaro; (4) unjust enrichment against defendant Giammarinaro; and (5) unjust enrichment against defendant Rossi. As stated above, the jury returned a verdict in favor of defendant Giammarinaro on the constructive trust cause of action. However, the jury found in favor of Kielhurn on the breach of fiduciary duty, conversion, and unjust enrichment causes of action as against defendant Giammarinaro. In regard to the unjust enrichment cause of action against defendant Rossi, the jury found in favor of that defendant.

The jury awarded Kielhurn the sum of $3,589 for moneys improperly taken from the Ace Island checking account; the sum of $10,208.31 for moneys improperly taken

with regard to the sale of St. John's Caterers; the sum of $15,000 for improvements made to 21 East Halley Lane as well as mortgage and tax payments for that property; the sum of $30,600 for the reasonable value of her property not returned or attempted to be returned; and the sum of $10,000 in punitive damages on the conversion cause of action, all against Giammarinaro.

## II. *DISCUSSION*

### A. Standard of Review

At the outset, the Court notes that Kielhurn has chosen to represent herself throughout all aspects of this case, including the trial and the current motions. The Court is therefore mindful that Kielhurn's submissions should be held "'to less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *see also Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir.1993). The Court recognizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of her lack of legal training. *See Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983). Indeed, District Courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, the Court is also aware that *pro se* status "'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Traguth*, 710 F.2d at 95 (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).

Neither Kielhurn nor Giammarinaro cites to authority under which she brings the instant motions. However, three of the four applications appear to be post-verdict motions for judgment as a matter of law. Accordingly, except for the plaintiff's request for an injunction, the Court will treat the current motions as if they had been brought pursuant to Rule 50 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

A court decides a motion for judgment as a matter of law under Fed.R.Civ.P. 50(a)(1) using the same standard that applies to motions for summary judgment. *See Alfaro v. Wal–Mart Stores, Inc.*, 210 F.3d 111 (2d Cir.2000). Specifically, the motion must be denied unless the court finds that there is such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result of sheer surmise and conjecture, or if the evidence is so overwhelming that reasonable and fair minded persons could only have reached the opposite result. *See Ryduchowski v. Port Authority of New York*, 203 F.3d 135, 141–42 (2d Cir.2000); *see also This is Me, Inc. v. Taylor*, 157 F.3d 139 (2d Cir.1998); *Concerned Area Residents for the Environment v. Southview Farm*, 34 F.3d 114 (2d Cir.1994); *Weldy v. Piedmont Airlines*, 985 F.2d 57 (2d Cir.1993). In making this determination, the court is required to view the evidence in the light most favorable to, to draw all reasonable inferences in favor of, and to resolve all credibility disputes to the benefit of the non-moving party. *See Ryduchowski*, 203 F.3d at 142; *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 425 (2d Cir.1999); *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 79 (2d Cir.1997).

### B. As to the Constructive Trust Cause of Action

As noted, the jury returned a verdict in favor of Giammarinaro on the constructive

trust cause of action. In particular, the jury found that Kielhurn established the existence of a confidential relationship between Giammarinaro and herself as well as the existence of a promise by Giammarinaro to Kielhurn that Giammarinaro would convey an interest in the premises 21 East Halley Lane, if Kielhurn transferred an interest in her Ocala property to Giammarinaro. However, the jury found that Kielhurn failed to prove that the transfer of the Ocala property to Giammarinaro was made in reliance on a promise by Giammarinaro. Kielhurn now moves for judgment as a matter of law on this cause of action.

█ Although the doctrine is to be applied flexibly, the elements that must be proven to establish a constructive trust are: "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment." *Sharp v. Kosmalski*, 40 N.Y.2d 119, 123, 386 N.Y.S.2d 72, 75, 351 N.E.2d 721 (1976); *see Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361–62 (2d Cir.1999); *Satler v. Merlis*, 252 A.D.2d 551, 551, 675 N.Y.S.2d 644, 645–46 (2d Dept.1998); *Whalen v. Harvey*, 235 A.D.2d 792, 794, 653 N.Y.S.2d 159, 161 (3d Dept.1997). Indeed, the Court instructed the jury in accordance with these principles charging that:

> In order to prove a constructive trust with regard to her claim of an interest of the defendant Claudia Giammarinaro in premises no. 21 East Halley Lane, Central Islip, New York, the plaintiff Annette Kielhurn must prove the following four elements by a preponderance of the evidence:
>
> First: That the plaintiff and the defendant Claudia Giammarinaro had a confidential relationship;
>
> Second: That the defendant Claudia Giammarinaro made a promise to the plaintiff that she would convey to her an interest in premises 21 East Halley Lane, Central Islip, New York if the plaintiff transferred an interest in the Plaintiff's Ocala, Florida property to the defendant Claudia Giammarinaro;
>
> Third: That the plaintiff transferred an interest in her Ocala, Florida property to the defendant Claudia Giammarinaro in reliance on the defendant's promise; and
>
> Fourth: As a result, there was unjust enrichment by the defendant Claudia Giammarinaro.

█ At trial, Kielhurn demonstrated that she conveyed an interest in the Ocala, property to Giammarinaro on two separate occasions. The first conveyance occurred on September 30, 1993, when she transferred an interest in the Ocala property to Giammarinaro in reliance on Giammarinaro's promise to convey an interest in the Central Islip house to her. However, when it became financially and legally impossible to transfer an interest in the Central Islip house to Kielhurn, Giammarinaro, at Kielhurn's request, conveyed her interest in the Ocala property back to the plaintiff.

The Court finds that the jury could reasonably have concluded that a constructive trust was not created as a result of the September 30, 1993, transfer. Indeed, that Giammarinaro transferred the Ocala property back to Kielhurn precludes a finding that Giammarinaro received an interest in the property as a result of a promise she made to Kielhurn. Accordingly, the jury's refusal to impose a constructive trust with regard to the first transfer of the Ocala property is a fair conclusion based on the evidence.

The second transfer of the Ocala property occurred on October 18, 1996, when Kielhurn, who was in prison at that point, conveyed her entire interest in the Ocala

property to Giammarinaro. The parties presented conflicting testimony about the reasons behind the transfer. Giammarinaro testified that she asked Kielhurn to transfer the Ocala property to her, because her son was living in the house and Kielhurn could not pay the mortgage while she was incarcerated. Giammarinaro also stated that Kielhurn "did tell me she wanted me to have the house."

Kielhurn testified that Giammarinaro was the person who suggested transferring the title of the Ocala property and, in fact, offered to look after the property while the plaintiff was in prison. Later in her direct testimony, Kielhurn stated, "[Giammarinaro] promised to return my house to me.... And I signed my house to her so that she could handle my affairs." During cross-examination, Kielhurn read passages of letters she had written to Giammarinaro from prison. In one letter, Kielhurn suggested that they move to Ocala together. In another letter, the plaintiff told Giammarinaro, "Everything belongs to you including Ocala." In yet another letter, Kielhurn wrote, "Sell Ocala. Sell CI. Let's move to Tampa. Let's buy a pontoon boat." However, in a different letter the plaintiff instructed Giammarinaro to sell the Ocala property and keep the proceeds. Kielhurn explained to the jury that when she and Giammarinaro discussed what to do with the Ocala property, she was virtually hysterical and had been prescribed tranquilizers which she was taking.

The Court finds that the jury could reasonably have inferred that Kielhurn's 1996 conveyance of the Ocala property to Giammarinaro was not in reliance on a promise by Giammarinaro. First, the testimony surrounding the reason for the conveyance is in conflict, and the jury, whose obligation was to determine the credibility of the witnesses, could reasonably have cred-

ited the statements and letters suggesting that Kielhurn transferred the property to Giammarinaro because she could not administer it from prison. That Kielhurn asked Giammarinaro to manage her financial affairs and otherwise act on her behalf while she was in prison supports the jury's conclusion that the 1996 conveyance was not made in reliance on a promise by Giammarinaro to convey an interest in her Central Islip house but rather in furtherance of Kielhurn's plan to have Giammarinaro oversee her personal finances.

Thus, the Court finds that the jury's verdict on the constructive trust cause of action is supported by the evidence, and its finding was not the result of sheer surmise or conjecture. *See Ryduchowski,* 203 F.3d at 141–42. Accordingly, Kielhurn's motion for a judgment as a matter of law with regard to the constructive trust cause of action is denied.

### C. As to Compensatory and Punitive Damages

#### 1. Damages in the conversion cause of action

Giammarinaro moves to reduce the jury's compensatory damages award for the conversion of the plaintiff's personal property from the sum of $30,600 to the sum of $4000 on the ground that Kielhurn failed to establish the reasonable value of the specific items converted.

Compensatory damages for conversion are measured by the full value of the property at the time of conversion, plus interest. *See Fantis Foods v. Standard Importing Co.,* 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 786, 402 N.E.2d 122 (1980); *Long Playing Sessions, Inc. v. Deluxe Laboratories, Inc.,* 129 A.D.2d 539, 539, 514 N.Y.S.2d 737, 738 (1st Dept.1987); *Hoffman v. Dorner,* 86 A.D.2d 651, 651, 447 N.Y.S.2d 20, 22 (2d Dept.1982).

Where the nature of the goods converted is such that they can be readily exchanged in the market place, the measure of damages is the fair market value of the goods at the time of the conversion, *see Mullen v. JJ Quinlan & Co.*, 195 N.Y. 109, 114, 87 N.E. 1078, 1080 (1909), *Wallingford v. Kaiser*, 191 N.Y. 392, 394, 84 N.E. 295, 295 (1908), which is generally the price at which the goods can be replaced in the market, *see Wallingford*, 191 N.Y. at 394, 84 N.E. at 295. In this case, the value of the goods would be determined by the cost to the plaintiff of replacing the goods in the market for used goods, not the lower market at which the used goods would be bought by a dealer in such goods. *See Ashare v. Mirkin, Barre, Saltzstein & Gordon*, 106 Misc.2d 866, 867, 435 N.Y.S.2d 438, 440 (Suff.Cty.1980) (finding that the market value of the converted law books was the cost of replacement by the plaintiff in the used book market rather than the price for which the used book dealer would purchase the volumes).

 Where property has no recognized use or practical market value, such as in the case of clothing, household goods, or furniture that is in use, the amount of the recovery is not restricted to the price that could be realized by a sale in the market. *See Lake v. Dye*, 232 N.Y. 209, 212, 133 N.E. 448, 448 (1921). Rather, the owner is allowed to recover the value to her based on her actual money loss in light of all the circumstances, except sentimental value. *See Lake*, 232 N.Y. at 212, 133 N.E. at 449. Expert opinion evidence as to the value of the objects is not required to establish a plaintiff's entitlement to recover a particular sum. *See Blauvelt v. Cleveland*, 198 A.D. 229, 230, 190 N.Y.S. 881, 883 (4th Dept.1921). Furthermore, a jury may consider a plaintiff's testimony as to her estimate of the converted property's value to her. *See Peters v. Berkeley*, 219 A.D. 261, 264, 219 N.Y.S. 709, 712 (1st Dept.1927). Alternatively, absent any other valuation by the plaintiff, proof that the defendant unlawfully sold the plaintiff's property for a certain sum is sufficient for the plaintiff to recover the amount realized from the unlawful sale. *See Mandakis v. Kahn*, 39 A.D.2d 717, 718, 331 N.Y.S.2d 553, 553 (2d Dept.1972).

"It is fundamental to the law of damages that the one complaining of injury has the burden of proving the extent of the harm suffered." *Berley Indus., Inc. v. City of New York*, 45 N.Y.2d 683, 686, 412 N.Y.S.2d 589, 591, 385 N.E.2d 281 (1978); *see J.R. Loftus, Inc. v. White*, 85 N.Y.2d 874, 877, 626 N.Y.S.2d 52, 54, 649 N.E.2d 1196 (1995). An individual whose property has been converted must establish the value of the property at the time of the conversion, *see Fantis Foods*, 49 N.Y.2d at 326, 425 N.Y.S.2d at 786, 402 N.E.2d 122; *Long Playing Sessions*, 129 A.D.2d at 539, 514 N.Y.S.2d at 738; *Hoffman*, 86 A.D.2d at 651, 447 N.Y.S.2d at 22, using the methods of proof described above. "Speculation and conjecture will not suffice." *Berley Indus.*, 45 N.Y.2d at 686, 412 N.Y.S.2d at 591, 385 N.E.2d 281.

 However, proof of damages to a mathematical certainty is not required, especially in cases such as this one where the market value of the property is not known. *See J.R. Loftus*, 85 N.Y.2d at 877, 626 N.Y.S.2d at 54, 649 N.E.2d 1196 (noting that a plaintiff may recover damages when the measure of damages "is unavoidably uncertain or difficult to ascertain"); *see generally Lake*, 232 N.Y. at 212, 133 N.E. at 448 (holding that used clothing and household goods do not have a market value). "The law is realistic enough to bend to necessity in such cases.... Even then, there must be a definite and logical connection between what is proved and the damages a jury is asked to find." *Berley*

*Indus.*, 45 N.Y.2d at 687, 412 N.Y.S.2d at 591, 385 N.E.2d 281; *see J.R. Loftus*, 85 N.Y.2d at 877, 626 N.Y.S.2d at 54, 649 N.E.2d 1196 (holding that even where damages are difficult to ascertain, "a reasonable connection between a plaintiff's proof and a jury's determination of damages is nevertheless necessary").

■ Applying these principles to the evidence presented at trial, the Court finds that the jury's award of compensatory damages with respect to Kielhurn's personal property was excessive and unsupported by the evidence. Kielhurn alleged the Giammarinaro converted all of her personal property and made general references to furniture, computers, jewelry, and clothing during the trial. However, after a review of the record, the Court has determined that Kielhurn mentioned only six items with any specificity: a sofa, a chair, a ring, two motorcycles, and a piano.

Kielhurn had flexibility in terms of the manner in which she could establish the value of this property. As noted, she could have proven the actual cost minus depreciation; the cost to her of replacing the products in the market for similar property; or even her own estimate of the value of the goods. However, notwithstanding her status as a *pro se* plaintiff, Kielhurn still had the burden to prove the value of property in some acceptable manner and failed to do so with regard to three out of the six items. Nowhere in the record could the Court find a reasonable value connected to the sofa, chair, or piano. In fact, Kielhurn did not offer a description of this property.

■ However, the plaintiff described the value of the ring to her. She stated that it was worth "thousands of dollars." Elsewhere in the record, the plaintiff referred to the ring as having a value of $4000. In light of Kielhurn's standing as a *pro se* plaintiff, and the fact

that the Court must draw every inference in favor of the non-moving party when deciding a Rule 50 motion, the Court finds that Kielhurn established the value of the ring to be the sum of $4,000. *See Peters*, 219 A.D. at 264, 219 N.Y.S. at 712 (finding that the jury may consider a plaintiff's testimony as to her estimate of the converted property's value to her when determining the amount of damages). In addition, during her cross-examination of Giammarinaro, Kielhurn elicited the fact that Giammarinaro sold two motorcycles belonging to Kielhurn for $800 each. Thus, the Court finds that Kielhurn demonstrated the combined value of two motorcycles as $1600. *See Mandakis*, 39 A.D.2d at 718, 331 N.Y.S.2d 553 (holding that amount defendant realizes as result of the sale of converted property can be used to establish damages for the conversion). In light of the fact that Kielhurn did not establish the value of the other items that were converted, the Court is constrained to reduce the amount of compensatory damages awarded for the conversion of personal property to the sum of $5600, reduced from $30,600. *See Warner v. Village of Chatham*, 194 A.D.2d 980, 598 N.Y.S.2d 863, 865 (3d Dept.1993) (reducing damage award from $13,000 to $11,500 where the only evidence about damages was the sum of $11,500, which was the price the plaintiff paid when he purchased the converted vehicle).

The Court notes that at the end of her testimony, Kielhurn offered what had been marked as plaintiff's exhibit 44 for identification. That exhibit consisted of a piece of paper and a bunch of receipts. The piece of paper probably contained a list of the specific pieces of personal property the plaintiff claims had been converted, and according to the plaintiff, the receipts would have proven the amount she paid for

each item of personal property Giammarinaro converted. The Court denied Kielhurn's request to move the piece of paper together with the receipts into evidence, finding that the items constituted unauthenticated hearsay. Kielhurn did not attempt to authenticate the receipts and did not wish to explain the document she had created.

The record contains evidence that Kielhurn possessed a boat, which remained in the driveway of 21 East Halley Lane while Kielhurn was imprisoned. Although the boat was sold for a sum of $4500, the Court cannot include that figure in the amount of compensatory damages, as Kielhurn's sister, who was trying to retrieve Kielhurn's property from Giammarinaro, was the individual who received the proceeds of the sale of the boat.

The damages that are recoverable include simple interest on the value of the converted property from the time of conversion. *See* CPLR § 5001; *Long Playing Sessions,* 129 A.D.2d at 539, 514 N.Y.S.2d at 738. Section 5004 of the CPLR sets the interest rate at 9% per annum. What is less clear is the date from which the interest should be computed. In this case, there were numerous acts of conversion that occurred over a period of time. After giving the parties an opportunity to be heard on this issue at oral argument, the Court finds that November 29, 1996, is the "single reasonable intermediate date" from which interest upon all the compensatory damages shall be computed. *See* CPLR 5001(b). In sum, the Court finds that Kielhurn is entitled to receive 9% per annum simple interest on the sum of $34,397.31, and that interest shall be calculated retroactively beginning on November 29, 1996. *See* CPLR §§ 5001, 5004.

## 2. As to punitive damages

■ Giammarinaro also contests the jury's award of punitive damages. Punitive damages are available if the defendant acted in wanton or willful obstruction of the legitimate owner's rights, "which in the case of conversion, means that the wrongdoer acted with knowledge of a high degree of probability of harm and with reckless indifference to the consequences." *American Financial Services Group v. Treasure Bay Gaming & Resorts, Inc.,* 2000 WL 815894 *13 (S.D.N.Y.2000); *see* (*Lamb v. Cheney and Son,* 227 N.Y. 418, 422, 125 N.E. 817) *Ashare v. Mirkin, Barre, Saltzstein & Gordon,* 106 Misc.2d 866, 867, 435 N.Y.S.2d 438, 440 (Suff.Cty.1980) (noting that a malicious act is one done deliberately with knowledge of the plaintiff's rights and the intent to interfere with them).

■ The Court finds that the jury's award of punitive damages is supported by the evidence. The requirements imposed for such damages in an action for conversion were satisfied, considering that the evidence established that while Kielhurn was in prison, Giammarinaro intentionally and continuously wrote checks against Kielhurn's bank account; retained money from the sale of Kielhurn's business; used Kielhurn's money to pay her personal bills; and refused to return Kielhurn's personal property despite repeated requests by Kielhurn's family for the return of that property. That Giammarinaro converted Kielhurn's property in this fashion knowing that Kielhurn had expressly placed her trust in Giammarinaro during a time when Kielhurn was emotionally distraught, being treated for depression and observed for suicide attempts makes Giammarinaro's conduct even more reprehensible. Obviously, each of Giammarinaro's repeated acts of conversion were made with the knowledge of a high degree of probability

of harm to Kielhurn's interests and with reckless indifference to the consequences. *See American Financial Services*, 2000 WL 815894 at *14.

Moreover, Giammarinaro knowingly deceived Kielhurn. Though no evidence of false representations was introduced at trial, the fact that Giammarinaro visited Kielhurn in prison on numerous occasions, but failed to mention that she was using Kielhurn's money to pay her personal bills leads this Court to believe that Giammarinaro's conduct with respect to Kielhurn was, at the very least, grossly reckless. *See American Financial Services*, 2000 WL 815894 at *14. Accordingly, the Court finds that the jury's verdict, awarding the plaintiff punitive damages in the amount of $10,000 was warranted and supported by the evidence, and Giammarinaro's motion for judgment as a matter of law with regard to such damages is denied.

### D. As to the Request for an Injunction

Kielhurn also moves the Court for an injunction that would prohibit Giammarinaro from "selling, transferring, disposing of, remortgaging, borrowing against in any fashion, or altering the condition of ... the house and the equity in the house which is located at 21 East Halley Lane, Central Islip." The plaintiff claims that she is entitled to such an injunction because: (1) the jury awarded her monetary damages; (2) Giammarinaro has no money; (3) the property at 21 East Halley Lane may satisfy the judgment against Giammarinaro; and (4) Giammarinaro has demonstrated a propensity to dispose of or convert assets. Giammarinaro opposes the plaintiff's request, arguing that the Court has denied the same request on two prior occasions. Giammarinaro also points out that the plaintiff offers no legal authority in support of her application.

Even if Kielhurn were to persuade this Court that: (1) Giammarinaro lacked the funds necessary to satisfy the present judgment; (2) the premises located at 21 East Halley Lane is Giammarinaro's only substantial asset; (3) Kielhurn established irreparable injury; and (4) Giammarinaro would frustrate the satisfaction of the judgment in this case by transferring, altering, encumbering, or remortgaging the premises located at 21 East Halley Lane, the Court declines to grant a preliminary or permanent injunction preventing Giammarinaro from taking any action with respect to the Central Islip property.

Here, the jury has awarded Kielhurn monetary damages. She will obtain a judgment in a short time. With the judgment, Kielhurn is not without relief. The plaintiff's remedy lies in enforcing the judgment pursuant to Articles 51 and 52 of the New York Civil Practice Law and Rules ("CPLR"). *See* Fed.R.Civ.P. 69(a) ("Process to enforce a judgment for the payment of money shall be a writ of execution ... and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held."). In addition, and more importantly, by recording the judgment in the Suffolk County Clerk's Office, the plaintiff will acquire a lien on the share of the real property owned by Giammarinaro. *See* CPLR § 5203(a). With the lien on the property, it would be very difficult for Giammarinaro to sell the property and deprive the plaintiff of the payment of her judgment. As such, the plaintiff's motion for an injunction is denied.

### III. CONCLUSION

Having reviewed the submissions of the parties and having given them the oppor-

tunity for oral argument thereon, it is hereby

**ORDERED**, that the motion by the plaintiff for judgment as a matter of law with regard to the constructive trust cause of action is **DENIED**; and it is further

**ORDERED**, that the motion by defendant Giammarinaro for a reduction of the amount of compensatory damages awarded by the jury is **GRANTED**; and it is further

**ORDERED**, that the jury award of the sum of $30,6000 in compensatory damages for the conversion of personal property is reduced to the sum of $5600; and it is further

**ORDERED**, that the motion by the defendant Giammarinaro to strike the punitive damages awarded by the jury is **DENIED**; and it is further

**ORDERED**, that the motion by the plaintiff for an injunction is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court is directed to enter a judgment in favor of the plaintiff Kielhurn and against the defendant Giammarinaro in the total sum of $44,397.31, plus pre-judgment interest on the compensatory damages award of $34,397.31; and it is further

**ORDERED**, that the Clerk of the Court is directed to calculate simple interest at a rate of 9% per annum beginning on November 29, 1996; and it is further;

**ORDERED**, that Stanley F. Werse, Esq., counsel for the defendant Giammarinaro withdrew from this action on April 27, 2001, with the approval of his client and the Court, and therefore, a copy of this Order is being sent to Mr. Werse and Giammarinaro, personally; and it is further

**ORDERED**, that the Clerk of the Court is directed to close the case.

**SO ORDERED.**